UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

CAONAISSA WON, individually and on behalf
of other persons similarly situated,

                              Plaintiff,

            -against-

AMAZON.COM, INC., AMAZON.COM
SERVICES LLC, AND AMAZON.COM SALES,
INC.,

                              Defendants.
_____

**MEMORANDUM & ORDER
21-CV-2867 (NGG) (RER)**

NICHOLAS G. GARAUFIS, United States District Judge.

This case arises under the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), which was enacted to fortify and expand employment protections for veterans and uniformed military service members.

Plaintiff Caonaissa Won, a former employee in an Amazon warehouse and an Army reservist, alleges that Amazon.com, Inc., Amazon.com Services LLC, and Amazon.com Sales, Inc. (collectively, "Amazon") violated 38 U.S.C. § 4316(b) by adopting employment policies disfavoring servicemembers taking short-term leaves of absence for military training. Amazon moves to dismiss Won's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), for lack of standing, and Rule 12(b)(6), for failure to state a claim. Amazon also moves to dismiss on the grounds that Won's suit is duplicative of an earlier suit she brought against the company. Finally, Amazon seeks to dismiss two entities as improperly named defendants.

For the following reasons, Amazon.com, Inc. and Amazon.com Sales, Inc. are each DISMISSED from the case without prejudice, and Won's claims for injunctive and declaratory relief are DISMISSED. The motion to dismiss is otherwise DENIED.

1

## I.   BACKGROUND

Won worked at an Amazon warehouse in New York from July 1, 2019, until about September 6, 2019, earning $17.50 an hour.[1] (Am. Compl. (Dkt. 18) ¶ 49.) At the same time, she was an active-duty member of the United States Army Reserve, which required periodic and mandatory trainings. (*Id.* ¶ 51.) To complete those trainings, she took two short-term leaves of absence while employed by Amazon. (*Id.* ¶¶ 51-52.) The first was from August 11 to August 21, 2019, and the second from August 22 to September 6, 2019. (*Id.* ¶ 52.)

Around the time of these absences, Amazon informed Won that she was not entitled to her full pay while on military leave, but that she would be eligible for differential pay – *i.e.*, her normal Amazon wages deducted by the amount of pay she received from the Army during the period of leave. (*Id.* ¶ 56.) Though Amazon initially failed to pay Won anything at all while she was away, it eventually corrected what it describes as an administrative error, mailing her a check for the differential pay the company's benefits policy provided. (*Id.* ¶ 57; Mem. of Law in Supp. of Defs.' Mot. to Dismiss ("Defs.' Mot.") (Dkt. 22-1) at 1, 4, 6.)

Won argues that 38 U.S.C. § 4316(b) entitles her and other similarly situated employees to full pay while on military leave, rather than the differential pay Amazon provided. She claims that Amazon continues to violate USERRA by failing to pay employees who take short-term military leaves of 30 days or fewer ("military leave") to the same extent it pays employees taking other kinds of leaves, like jury duty or bereavement leave, because the benefits provided to employees on those comparable, non-military leaves include full pay. (Am. Compl. ¶¶ 5-7, 57-77.)

---

[1] The following facts are taken from the Amended Complaint, which the court accepts as true at this procedural posture. *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).

She brings this action on behalf of herself and a putative class comprised of current and former Amazon employees throughout the United States who took short-term military leaves from October 10, 2004, to the present. (*Id.* ¶¶ 39-47.) Won seeks damages, a declaratory judgment, and injunctive relief mandating modification of the allegedly discriminatory policies. (*Id.* at 14.)

Amazon moves to dismiss under Rules 12(b)(1) and 12(b)(6). (*See* Defs.' Mot. at 5-24.) The company argues that (1) Won does not have standing because she does not allege a live case or controversy; (2) USERRA does not reach military leave as a "benefit"; (3) the non-military leave benefits Amazon provides are not comparable to military leave; (4) Won has impermissibly split her claims across two lawsuits; and (5) two of the corporate entities named should be dismissed as defendants. *Id.*

## II. LEGAL STANDARD

Rule 12(b)(1) requires dismissal where the court lacks subject matter jurisdiction, including for lack of Article III standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992). To establish standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).[2] A plaintiff has the burden to demonstrate standing, a standard that escalates depending on the stage of the litigation. *Lujan*, 504 U.S. at 561. On a motion to dismiss, standing may be established by making "general factual allegations of injury resulting from the defendant's conduct." *Id.*

---

[2] When quoting cases, unless otherwise noted, all citations and quotation marks are omitted, and all alterations are adopted.

Rule 12(b)(6) requires dismissal for failure to state a claim. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 545 (2007). A plaintiff need not provide "detailed factual allegations" at the pleading stage, but the facts alleged must "raise a right to relief above the speculative level." *Id.* The pleadings must therefore at least "raise a reasonable expectation that discovery will reveal evidence" needed to prove the legal elements of the claim. *Id.*

In evaluating the legal sufficiency of the plaintiff's claim, the court must "accept as true all material factual allegations in the complaint." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998). It "constru[es] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). The court's role is to "assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Lynch v. Cty. of N.Y.*, 952 F.3d 67, 75 (2d Cir. 2020). The essential question is whether the complaint has provided "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

## III. DISCUSSION

USERRA is an anti-discrimination statute: it mandates that, at virtually all U.S. employers, employees with military status must be treated equally to other similarly situated employees when it comes to certain employment rights and benefits. As interpreted by the Department of Labor's implementing regulations, where an employer provides "benefits," including pay, to employees on a leave of absence, USERRA requires that employers offer the "most favorable treatment accorded to any comparable form of leave when [an employee] performs service in the uniformed services." 20 C.F.R. § 1002.150(b). This case principally addresses whether USERRA requires any paid leave for military absences

at all, and, if so, whether Amazon violates USERRA with the particular "benefits" it provides for military leaves as compared with other, comparable kinds of leave. The court begins with standing, proceeds to those statutory questions, and then addresses claim splitting and which defendants have been properly named.

### A. Justiciability

As a threshold matter, Amazon makes two arguments as to Won's Article III standing. First, it contends that Won's claim was mooted when the company corrected its administrative error and tendered Won the differential pay that Amazon provides for military leave. Second, it argues that Won has not suffered an injury "even under her own theory," *i.e.*, that USERRA entitles her to full pay. (Defs.' Mot. at 6.) The court rejects both arguments, but concludes nonetheless that Won has failed to demonstrate standing as to her claims for injunctive and declaratory relief. Those claims are therefore DISMISSED.

#### 1. Mootness

As to Amazon's first argument, the company argues that Won's claim was mooted when it paid her the differential pay it generally provides eligible employees for military leaves. (*See* Defs.' Reply (Dkt. 22-6) at 6.) Believing that USERRA requires nothing more, Amazon argues that Won has received what she is due and any claim she may have had arising from the company's earlier administrative error is now moot.

This argument, however, badly disfigures Won's USERRA claim, which is that she should retain her *full* Amazon pay while on military leave because employees on comparable leaves retain theirs. (Pl.'s Opp'n. (Dkt. 22-5) at 9.) That injury has not been mooted for the simple reason that Won never received the full pay she claims she is entitled to; instead she received lesser, differential pay. The fact that, before she amended her complaint, she was also seeking the differential pay Amazon had mistakenly

5

failed to remit is of no moment. *See Woodard v. New York Health & Hosps. Corp*., 554 F. Supp. 2d 329, 354 (E.D.N.Y. 2008) (reasoning that a *post hoc* offer of monetary relief can only moot a legal claim if "there is no injury that remains to be redressed"). Her claim for damages has not been mooted because she properly amended her complaint to seek pay she has undisputedly not received.

### 2.   Standing

#### a.   *Won's Claim for Damages*

For similar reasons, as to her claim for those damages, Won has pleaded a concrete injury in fact: she received less pay than she alleges she is entitled to. To state an injury under USERRA, Won need only allege that Amazon is a qualifying employer under 38 U.S.C. § 4303(4)(A) and that she has been plausibly denied "rights and benefits" that the company provides to non-military employees on comparable types of leave, in violation of § 4316(b). *See* 38 U.S.C. § 4316(b)(1)(B) (requiring employers to provide the same benefits "as are generally provided by the employer of the person to employees having similar seniority, status, and pay who are on furlough or leave of absence under a contract, agreement, policy, practice, or plan in effect"). Accordingly, Won must allege that another kind of leave is plausibly comparable to short-term military leave and the benefits provided to non-military employees for those leaves are more favorable.[3] She has done so by alleging that Amazon provides "a

---

[3] USERRA's implementing regulations, promulgated by the Department of Labor after notice and comment rulemaking, require that

> If the non-seniority benefits to which employees on furlough or leave of absence are entitled vary according to the type of leave, the employee must be given *the most favorable treatment accorded to any comparable form of*

non-seniority right or benefit of paid short-term leave to employ-
ees for nonmilitary reasons such as bereavement or jury duty
service, but denies this benefit and right to employees taking
short term-leave in order to perform military service." (Am.
Compl. ¶ 81.) She has further alleged that Amazon "pays employ-
ees who take short-term sick leave, bereavement, or jury leave
their full pay during those leaves (up to a certain duration), but
it only pays employees who take military leave differential pay,"
and that those other leaves "are comparable to military leave
with respect to the duration of these leaves and their nature." (*Id.*
¶ 62-73.) The court addresses below whether these allegations
are legally viable as matter of statutory interpretation; but as a
matter of Article III standing, the court finds that Won has alleged
a concrete injury by identifying a monetary loss she actually in-
curred, of a benefit she is arguably entitled to by statute. *See
TransUnion*, 141 S. Ct. at 2200, 2205 ("Only those plaintiffs who
have been concretely harmed by a defendant's statutory violation
may sue that private defendant over that violation in federal
court."); 38 U.S.C. § 4323(d) (providing a statutory cause of ac-
tion).[4]

---

      *leave* when he or she performs service in the uniformed
      services.

20 C.F.R. § 1002.150(b) (emphasis added). Amazon does not dispute any
aspect of the Department's regulations.

[4] Indeed Amazon barely disputes this point, contesting standing only in
footnote, and "[i]t is well settled . . . that a court need not consider argu-
ments relegated to footnotes." *F.T.C. v. Tax Club, Inc.*, 994 F. Supp. 2d 461,
471 (S.D.N.Y. 2014) (collecting cases); (Defs.' Mot. at 6 n.2.). Amazon is
wrong in any event. The company argues, previewing its statutory argu-
ments *infra*, that Won cannot have standing even under her own theory of
USERRA because the company's comparable jury duty leave benefit is
capped at ten days and, if Amazon was required to provide military leave
comparable to jury duty, it too would be capped – leaving Won worse-off,
and therefore uninjured for Article III purposes. (Defs.' Mot. at 6 n.2.) But

b. *Won's Claims for Injunctive and Declaratory Relief*

Won's standing when it comes to her claims for injunctive and declaratory relief, however, are less secure. Though neither party raised the point, the court has an independent obligation to ensure that it has subject matter jurisdiction over all claims. *See Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011) ("federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press"). Standing must be

---

that assumes the outcome of a comparability analysis that has not been, and cannot be, conducted at this stage. Even if the conclusion of such an analysis did leave a hypothetical military leave policy capped, nothing in the pleadings supports Amazon's critical assumption that the cap would apply to *total* annual leave rather than per *instance* of leave. And even if the cap did apply annually, the difference between full and differential pay might still be so high as to offset its effect.

Moreover, as to the specific personal injury Won alleges, Amazon's own submission in reply if anything supports Won's plausible injury because Amazon's jury leave policy appears to apply per instance of leave. (*See* Defs.' Reply Ex. 2 (Dkt. 22-9) at ECF p. 3.) Where the cap applies per instance of leave, assuming Won was paid for five weekdays of leave each week during the two 2019 periods alleged in the complaint, only the most incredible assumption about her military pay would have left Won uninjured (because a 10-day cap would only have had any effect for two days across her 8-day leave and 12-day leave). (Am. Compl. ¶¶ 52, 62.) On every other day, the full pay she seeks would have been by definition greater than differential pay. Because Amazon does not proffer evidence that "contradict[s] [the] plausible allegations" in Won's complaint, the court treats its 12(b)(1) motion as a facial (rather than fact-based) challenge to Won's standing. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016) ("plaintiffs are entitled to rely on the allegations in the Pleading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing"). The court is therefore required to draw all reasonable inferences in Won's favor, *id.* at 56-57, and has little trouble concluding she has met the injury-in-fact requirement when doing so.

assessed, moreover, for each remedy sought. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111-12 (1983).

Here, Won seeks – as USERRA provides, *see* 38 U.S.C. § 4323(e) – an injunction requiring Amazon to "to pay its employees during short-term military leave in the future to the same extent that Amazon pays for other comparable short-term nonmilitary leaves." (Am. Compl. at 14.) Statutory standing, however, does not necessarily entail Article III standing, and although a shift in the company's policies may have broader future consequences for members of the putative class, Won must also personally satisfy standing as the class's putative representative. *See Warth v. Seldin*, 422 U.S. 490, 502 (1975) (named plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent"). Although a class has not yet been certified in this case, the court cannot defer standing where "the standing of the named plaintiffs is in question." *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 465 (S.D.N.Y. 2013).

Here, the trouble is that "a plaintiff generally lacks standing to seek injunctive or declaratory relief against his or her former employer, as there is no prospect that he or she will be injured in the future." *Kassman*, 925 F. Supp. 2d at 465-66. Won is no longer an employee of Amazon, and although a limited exception might apply to employees who anticipate rejoining the company or who seek reinstatement as part of the suit, *id.* at 465-69, neither is true here. Her claims for injunctive and declaratory relief are therefore DISMISSED without prejudice.

The court recognizes the "growing consensus among district courts that class certification is logically antecedent [to standing analysis, and] where its outcome will affect the Article III standing determination, [] the weight of authority holds that in general class certification should come first." *Blessing v. Sirius XM*

*Radio Inc.*, 756 F. Supp. 2d 445, 451 (S.D.N.Y. 2010). Here, the court has not yet been asked to certify a class in this case. Should Won go on to seek certification, it is possible another named plaintiff with an injury arising from Amazon's same conduct would satisfy both Article III standing and Rule 23(b)(2). The court therefore GRANTS leave for Plaintiff to amend her complaint accordingly, subject to a Rule 15 analysis at a later stage. *See* Fed. R. Civ. P. 15(c); *see, e.g.*, *In re Simon II Litig.*, 211 F.R.D. 86, 144 (E.D.N.Y. 2002) (applying "a liberal rule of relation back" when adding plaintiffs).

### B. The "Benefits" Protected by USERRA

Having swept away these threshold questions, the court arrives at the core arguments Amazon makes in its motion to dismiss: first, that USERRA does not mandate *any* paid leave for military service; and second, that even if it did, Won cannot plausibly allege a violation of the statute in Amazon's policy of providing only differential pay, rather than full pay, to employees taking military leaves. Amazon's first argument poses the key statutory question: whether paid leave for uniformed servicemembers is one of the "rights and benefits" protected by USERRA. The Third and Seventh Circuits have recently held on analogous facts that it is, and the court substantially agrees with their analyses. *See Travers v. Fed. Exp. Corp*., 8 F.4th 198, 203 (3rd Cir. 2021); *White v. United Airlines, Inc.*, 987 F.3d 616, 625 (7th Cir. 2021). The question is one of first impression in the Second Circuit.

### 1. Text

As it must, this court's analysis begins with the text of the relevant statutory provisions. 38 U.S.C. § 4316(b)(1) requires that:

> [A] person who is absent from a position of employment by reason of service in the uniformed services shall be—
>
> > (A) deemed to be on furlough or leave of absence while performing such service; and

> (B) entitled to such other rights and benefits not de-
> termined by seniority as are generally provided by
> the employer of the person to employees having sim-
> ilar seniority, status, and pay who are on furlough or
> leave of absence under a contract, agreement, policy,
> practice, or plan in effect at the commencement of
> such service or established while such person per-
> forms such service.

38 U.S.C. § 4316(b)(1). The language of § 4316(b) is clear: it
establishes an "equality principle," *White*, 987 F.3d at 624, that
requires an employer to treat uniformed service members
"deemed to be on furlough or leave" the same as it would non-
military service members on comparable leaves. 38 U.S.C.
§ 4316(b)(1)(A).

Specifically, the statute mandates that those on military leave be
"entitled to such other rights and benefits not determined by sen-
iority as are generally provided" to other employees of "similar
status." 38 U.S.C. §§ 4316(a), (b). Congress then went on to spe-
cifically define "rights and benefits" in § 4303(2):

> The term "benefit," "benefit of employment" or "rights
> and benefits" means the terms, conditions, or privileges
> of employment, including any advantage, profit, privi-
> lege, gain, status, account, or interest (including wages
> or salary for work performed) that accrues by reason of
> an employment contract or agreement or an employer
> policy, plan, or practice and includes rights and benefits
> under a pension plan, a health plan, an employee stock
> ownership plan, insurance coverage and awards, bo-
> nuses, severance pay, supplemental unemployment
> benefits, vacations, and the opportunity to select work
> hours or location of employment.

38 U.S.C. § 4303(2).

The court's analysis proceeds first with this § 4303(2) definitional provision, and then addresses the § 4316(b) operative provision. Under either analysis the conclusion is the same: paid leave is a benefit protected by the text of USERRA. Because Congress capaciously defined "rights and benefits," this court's interpretation follows its direction and recognizes paid leave as a "term, condition[], or privilege of employment." That conclusion is bolstered by the operation of § 4316(b), which would cease to function sensibly on Amazon's reading.

### a. The § 4303(2) Definitional Provision

First, the court concludes that paid leave falls within the categories of rights expressly enumerated in the definition provided in § 4303(2). Where language in a statute is "clear and unambiguous," the court is "bound to read it exactly as it was written." *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 439 (2002). An employee's compensation while on leave falls squarely in the ambit of the expansive terms invoked by the statute: "profit," "privilege," "gain," or "any advantage." 38 U.S.C. § 4303(2). Profit, for one, is defined as "an advantage, benefit, accession of good, gain, or valuable return especially in financial matters," and gain is defined as "an increase in or addition to what is of profit, advantage, or benefit." *Profit*, Webster's Third New International Dictionary (1993); *gain*, *id.* It is therefore difficult to imagine what may constitute "a valuable return" for employment or an increase in "benefit," if not the wages one receives, even if those wages are an employment benefit conferred during a period of leave. *See Travers*, 8 F.4th at 205 ("The ordinary understanding of the words reaches a wide range of benefits, including payment during leave.").

Amazon responds that paid leave would have been explicitly mentioned in the statutory definition had Congress intended it to be provided. (*See* Defs.' Mot. at 14.) This argument is rooted in the *expressio unius* canon of construction, which provides that

when a statute specifically mentions one thing, all things not mentioned are excluded from the provided set. *See* Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 96 (2012); *see also White*, 987 F.3d at 621 (discussing the canon). It is clear, however, that Congress did not intend the terms in § 4303(2) to be an exhaustive list of benefits that trigger USERRA protection. They comprise, rather, a non-exhaustive "laundry list."

The text and structure of § 4303(2) demonstrates Congress's intent to provide a broad, non-exhaustive illustration of the kinds of employment privileges and entitlements that might fall under the category of "rights and benefits." The provision is structured as a list wherein each consecutive clause serves to further illustrate the breadth of what came before it. Congress defined "rights and benefits" to mean three general, nonspecific categories: "the terms, conditions, or privileges of employment." 38 U.S.C. § 4303(2). This structure is repeated in the following clause, where a series of examples is introduced by the word "including," which is "an expansive or illustrative term." *Bloate v. United States*, 559 U.S. 196, 207 (2010); *see also* Scalia & Garner, *supra*, at 116 (explaining the principle that in "good English usage and in textualist decision-making," "include" is presumed to be used in a nonexclusive manner). Further, the word "any" immediately follows "including," which emphasizes that the reach of "rights and benefits" extends beyond those that are explicitly mentioned in the statutory definition. *See Smith v. Berryhill*, 139 S. Ct. 1765, 1774 (2019) (noting that "any" is typically used expansively). Further, Congress did not tether "any" or "including" to limiting language, and therefore the terms should be read broadly. *See United States v. Gonzales*, 520 U.S. 1, 5 (1997) (concluding that "any" should be read broadly unless it is explicitly restricted by "limiting language").

The language used in § 4303(2) functions as a purposeful acknowledgement that among the proliferation of possible "rights and benefits" that are named, there may be others that fall under the statute's scope that were not mentioned; the list is thus not an apt example of the *expressio unius* canon. *See White*, 987 F.3d at 621 (reasoning that the *expressio unius* canon breaks down when a list is filled with expansive terms, as is the case with § 4303(2)); Scalia & Garner, *supra*, at 96 ("The doctrine properly applies only when the *unius* . . . can reasonably be thought to be an expression of all that shares in the grant or prohibition involved. Common sense often suggests when this is or is not so."). The lack of limiting language in § 4303(2) is underscored by the absence of any overt exceptions to what might constitute a "term," "condition," or "privilege[] of employment," but which would not be included in § 4316(b)'s "rights and benefits."

Amazon also argues that the parenthetical in § 4303(2) qualifies the "rights and benefits" protected, reaching only those provided in exchange for work performed. But one need not consult legislative history to see that Congress's words in § 4303(2)'s parenthetical – "(including wages or salary for work performed)" – sought to expand rather than contract the meaning of "rights and benefits." Congress amended this clause in 2010 to change the parenthetical from "other than wages or salary for work performed" to "*including* wages or salary for work performed." *Compare* Pub. L. No. 103-353, §2(A), 108 Stat. 3149, 3150 (1994), *with* Pub. L. No. 111-275, 124 Stat. 2887 (2010). The 2010 Amendment served to overrule an Eighth Circuit decision which interpreted the statute to "condone wage discrimination." *White*, 987 F.3d at 622; *see also Gagnon v. Sprint Corp.*, 284 F.3d 839, 853 (8th Cir. 2002) (the "term 'benefit,' as defined by the USERRA, specifically excludes wages or salary for work performed"). The phrase the Eighth Circuit held to be limiting ("other than") was erased and replaced with a new, expansive

14

word ("including"). That is: the parenthetical was revised precisely so that it would not function in the exclusionary way Amazon suggests it does. *See White*, 987 F.3d at 623. Amazon's argument that the parenthetical acts as a qualifier distinguishing between work performed for an employer versus work not performed does not mesh with the plain text of the amended statute. Further, as the Seventh Circuit noted in *White*, it is unimportant that Congress chose not to erase the parenthetical altogether: there is no significance in "Congress's decision to fix the statute one way (*i.e.*, replacing 'other than' with 'including') instead of another way (*e.g.*, deleting the entire parenthetical)." *Id.* Amazon's attempt to create limitations in a provision specifically designed to resist them is unavailing.

Section 4303(2) is a broad definition meant to provide full equality to service members in their places of work, including leave. Where "Congress chooses not to include any broad exceptions to a broad rule," it is not the job of the court to invent one. *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1747 (2020). Rather, the court must "apply the broad rule" as it stands. *Id.*

### b.   *The § 4316(b) Operative Provision*

Amazon makes two additional arguments about the text of the USERRA's operative provision: (1) that the proper inquiry should be whether § 4303(2) covers "paid military leave" rather than "paid leave"; and (2) that the word "generally" in § 4316(b) requires only approximate parity between benefits. (*See* Defs.' Mot. at 8-16.) The court rejects both arguments because they too insist on an exception to a broad rule that lacks any "textual basis." *See City of New York v. U.S. Postal Serv.*, 519 F. Supp. 3d 111, 120 (E.D.N.Y. 2021) (reasoning that there must be "textual basis for an exception" when the meaning of a "broad rule" is at issue).

First, Amazon's assertion that there is a distinction between an "abstract category of benefits" like "paid leave" and more specific benefits like "paid military leave," lacks any textual grounding.

(Defs.' Mot. at 13.) As the Third Circuit explained in response to an identical argument, the text of § 4316(b) protects against employees seeking to create entirely new benefits through levels of linguistic abstraction. *See Travers*, 8 F.4th at 204. Section 4316(b) has a requirement that the benefit be actually "provided by the employer to employees," which "rules out illusory benefits that exist in theory, not in practice." *Id.* at 204. Similarly, forcing the court to operate at the contrived level of generality Amazon suggests here would "undermine the larger statutory scheme" of USERRA, confusing courts by tempting them to compare types of benefits rather than types of leave. *Id.* (reasoning that the "benefit" is the "pay while on leave," not the "label given to the leave"). When it comes to leave, USERRA's implementing regulations require courts to compare types of leaves, and it is impossible to do this comparison when the type of leave is collapsed into "the definition of the benefit." *Id.* The court declines to adopt an interpretation of USERRA that frustrates efforts to actually implement it.

Second, Amazon's emphasis on the word "generally" in § 4316(b) is also mistaken.[5] The company claims that "generally" indicates that an employer has only a "flexible" obligation to ensure approximate parity among benefits. (Defs.' Mot. at 8-9.) But "generally" in the statute modifies "provided," and describes the kinds of benefits subject to USERRA – *i.e.*, those benefits employees are routinely eligible for. It does not describe the equality principle, which is set forth in the language that requires that military employees be "entitled to such other rights and benefits" as non-military employees. 38 U.S.C. § 4316(b)(1); *see also* 20 C.F.R. § 1002.150(b) ("the employee must be given

---

[5] § 4316(b)(1) provides that employees with military status be "entitled to such other rights and benefits not determined by seniority as are generally provided by the employer of the person to [other] employees." 38 U.S.C. § 4316(b)(1).

the most favorable treatment accorded to any comparable form of leave"). The statutory scheme, then, requires courts to conduct a comparability analysis for benefits that are "generally provided" and, after that analysis, ensure equal treatment – not merely "generally" equal treatment. And even if a "background [] legal principle[]" exists that would enable the court to permit sufficiently "trivial" inequality, (Defs.' Mot. at 8), it could do so only after the benefit of discovery that would include, *e.g.*, the sources and amounts of outside income for other kinds of leave, like New York's and other states' compensation for jury duty, as well as Amazon's administrative costs entailed in offsetting the income (to the extent the company chooses to provide only differential pay across kinds of comparable benefits). The court therefore finds no support in the word "generally" to dismiss the action.

2.   History and Purpose

Even if all the foregoing textual ambiguities Amazon suggests were plausible, reading the statute as the company does would undermine the purposes of USERRA as well as the history of veterans' rights legislation. And even a strictly textualist analysis of the statute must be informed by Congress's purpose. *See generally* John F. Manning, *What Divides Textualists from Purposivists?*, 106 Colum. L. Rev. 70, 84 (2006) (describing how Congress's purpose bears on the meaning of the words it uses).

The history of USERRA reflects Congress's consistent intent to broaden rights for veterans and active service members. Congress first legislated to protect servicemembers after World War II, when the struggles of military personnel reintegrating into society were at their height, and again later legislated to incentivize reserve service. *See Monroe v. Standard Oil Co.*, 452 U.S. 549, 555 (1981) (describing the need to provide servicemembers with statutory rights first in 1941, and then again in 1951 to "strengthen the Nation's Reserve Forces."); *see also* H.R. Rep. No. 103-65(1) at 53 (1993) (explaining that later conflicts in the

17

"Persian Gulf in 1990 and 1991 underscore the need for military personnel and employers to be able to understand clearly their rights and responsibilities").

In USERRA's predecessor statutes, veterans' rights provisions were more confined in scope: they were focused on ensuring servicemembers kept their jobs, "designed to provide reemployment for veterans on their return to civilian life." *Waltermyer v. Aluminum Co. of Am.*, 804 F.2d 821, 823 (3d Cir. 1986); *Monroe*, 452 U.S. at 555 ("Statutory re-employment rights for veterans date from the Nation's first peacetime draft law, passed in 1940, which provided that a veteran returning to civilian employment from active duty was entitled to reinstatement[.]"). Later amendments to those laws, however, expanded both who was protected under the statutes and the legal rights available to them, including by instating a bar against discriminating among employees in the workplace. *See Waltermye*r, 804 F.2d at 823. The first major amendment, the VRR Act of 1968, was enacted to "encourage noncareer service in the uniformed services by minimizing disadvantages to civilian careers and employment that could result from such service." *Gummo v. Vill. of Depew*, 75 F.3d 98, 104 (2d Cir. 1996). Another, the Vietnam Era Veterans Readjustment Assistance Act of 1974 ("VRRA"), followed the VRR, requiring certain employers to take "affirmative action" to hire veterans. *See generally* 38 U.S.C. § 4212.

This expansionist narrative was disrupted only by *Monroe v. Standard Oil Co*. in 1981, when the Supreme Court held that the VRRA was intended to protect servicemembers against discrimination but "not to grant them preferential treatment." *Waltermye*r, 804 F.2d at 823 (citing *Monroe*, 452 U.S. at 558). As such, the Court concluded that reservists taking leave were not entitled to "all the incidents of employment accorded working employees." *Id.* But Congress overruled that decision: consistent with the earlier history of veterans' rights legislation, it adopted

USERRA "to replace the [VRRA] in order to 'clarify, simplify, and where necessary, strengthen the existing veterans' employment and reemployment rights provisions.'" *Gummo*, 75 F. 3d at 105 (quoting H.R. Rep. No. 65, 103d Cong., 2d Sess. 19 (1994)).

One of USERRA's express, core purposes is "to encourage non-career service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service." 38 U.S.C. § 4301(a)(1). Accordingly, Congress, when describing the reach of "rights and benefits" entitled to USERRA protection, explained that § 4303(2) was meant to be "illustrative and not intended to be all inclusive." H.R. Rep. No. 103-65(1) at 21. The terms provided in the definitional provision were made intentionally broad to "include all attributes of the employment relationship which are affected by the absence of a member of the uniformed services because of military service." *Id.* Accordingly, USERRA requires more than just "general parity" in the benefits offered to military service members compared with their non-military colleagues – contrary to what Amazon, relying on the same outdated reasoning employed by the *Monroe* Court, suggests. (*See* Defs.' Reply at 6.) Consistent with the statutory scheme, the Department of Labor interprets USERRA to require that employers provide the most "favorable treatment" to military servicemembers on leave that they give to other employees on comparable leaves. 20 C.F.R. § 1002.150(b).

Even if ambiguity persisted despite this overwhelming history, the "Supreme Court has explained that reemployment protections for servicemembers are 'to be liberally construed for the benefit of those who left private life to serve their country.'" *Serricchio v. Wachovia Sec. LLC*, 658 F.3d 169, 175 (2d Cir. 2011) (quoting *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 284 (1946)). Congress expressly adopted that rule of construction when it enacted USERRA. *See* H.R. Rep. No. 103-65(1)

at 19 ("[T]he Committee wishes to stress that the extensive body of case law that has evolved over that period . . . remains in full force and effect in interpreting these provisions. This is particularly true of the basic principle established by the Supreme Court that the Act is to be 'liberally construed.'"). Thus, although the court has no occasion to apply the *Fishgold* canon given the unambiguous text of USERRA, if it came to choosing between an interpretation that would deny a benefit to a servicemember and an equally plausible interpretation that would grant a benefit, the court would opt for the latter. See *Hill*, 252 F.3d at 312-13 ("Because USERRA was enacted to protect the rights of veterans and members of the uniformed services, it must be broadly construed in favor of its military beneficiaries.").

Amazon's final resort to elephants and mouseholes is also unpersuasive. (*See* Defs.' Mot. at 14-16.) The company argues, in short, that the court should hesitate in its reading of the plain text because of the economic and political consequences it would entail. *See Whitman v. Am. Trucking Ass'n*, 531 U.S. 457, 468 (2001) (crafting a clear statement rule because Congress "does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions"). But there is no elephant and § 4303(2) is not a mousehole.

Construing paid leave as a "benefit" under USERRA would not restructure employment relationships nationwide, as Amazon insinuates, because USERRA establishes a nondiscrimination principle that works within existing employment structures to provide military service members benefits that are available to employees similarly situated. Employers, then, decide which "rights and benefits" to provide to employees. And even where employers elect to provide various kinds of paid leave, the Department of Labor has adopted 20 C.F.R. § 1002.150(b) to ensure that equal treatment is demanded only after a multi-factor comparison between the characteristics of provided leaves

and an interrogation of the favorability of the benefits provided to each. It is Amazon, and other employers, that construct the stage on which USERRA performs.

Moreover, the consequences of the court's common sense interpretation are small, even assuming comparability – which, again, remains for summary judgment or a jury. As Won notes, Amazon's "8,000 servicemembers served a total of 20,000 days in the Reserve and national Guard in 2020. . . an average of just 2.5 days of leave per person per year." (Pl.'s Mem. at 9.) Nationwide, as the *White* court observed, "[l]ess than one percent of employees in the national economy are reservists" and "[o]f those, some undoubtedly work for employers who do not provide compensation for comparable forms of nonmilitary leave, while others work for employers who already provide paid military leave." *White*, 987 F.3d at 625. And, finally, the "mousehole" is itself not small: USERRA expressly adopts a broad definition of "benefits," for which any commonsense understanding of "paid leave" fits comfortably inside. Tellingly, Amazon relies only on the outdated reasoning in *Monroe*, a case about USERRA's more restrictive predecessor statute, to claim that Congress intended a narrow conception of "benefits" under § 4303(2). After the statute's amendment, even Amazon's extratextual policy considerations support the plain textual reading.

All of this evidence thus confirms the court's reading of "rights and benefits" in 38 U.S.C. § 4316(b) to encompass paid leave. Amazon's motion to dismiss on this basis is therefore DENIED.

### C.   The Differential Pay Provided by Amazon

Amazon's motion next challenges whether Won has sufficiently pleaded that (1) military leave is comparable to other kinds of generally provided leave, like jury duty, sick, or bereavement leave; and (2) the payment scheme offered to employees taking those leaves (in some cases, full pay without an offset for an outside source of income) is more favorable than the differential pay

provided for military leave. (Defs.' Reply. 9-15.) But both allegations – which would establish elements of the USERRA claim – are ultimately questions of fact for the jury (or the court, on summary judgment). Until then, at the motion to dismiss stage, the court holds that Won has pleaded allegations sufficient to survive Amazon's 12(b)(6) motion.

> 1.   Won has pleaded a plausible comparison between jury duty and military leave.

The court first considers whether Won has alleged a plausible comparison between military leave (with differential pay) and other kinds of generally provided leave (with full pay). To do so, the court applies the Department of Labor's implementing regulations, which emphasize three factors to inform the comparability analysis, including the "duration of the leave," the "purpose of the leave," and "the ability of the employee to choose when to take the leave." 20 C.F.R. § 1002.150(b). Of these factors, "the most significant factor to compare" "may be" the duration of the two leaves. *Id.* Neither party argues that 20 C.F.R. § 1002.150(b) is "arbitrary, capricious, or manifestly contrary" to the purposes of USERRA, and so the court gives the regulation "controlling weight." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984). Thus, a claim alleging that an employer violated USERRA § 4316(b) by denying those on military leave the more favorable benefits it provides to those on similar non-military absences must allege that the leaves in question are of similar duration, that they share a common purpose, and that in both circumstances an employee's control over the timing of the leave is restricted. *See White*, 987 F.3d at 625. To survive a motion to dismiss, Won's complaint need not definitively prove that the two forms of leaves are comparable; rather, the complaint must sketch a comparison that is plausible. *See Twombly*, 550 U.S at 570; *White*, 987 F.3d at 625 (holding that the comparability analysis is a fact-intensive inquiry requiring

discovery and that allegations of comparability suffice at the pleading stage).

For now, the court will address the comparison drawn between jury duty and military leave. The court focuses there because that comparison is the most salient of the three made in the complaint, and Won need only sufficiently demonstrate that there is at least some other category of comparable leave that is treated more favorably than military leave to plead that she has been injured by Amazon's policies. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (reasoning that the pleading standard created by Rule 8(a) is sufficiency); *Twombly*, 550 U.S. at 563 (reasoning that a complaint must only "meet the minimum standard of adequate pleading"). This analysis leads the court to conclude that Won has alleged sufficient facts that military leave is comparable to at least one form of non-military leave generally available to employees at Amazon.

As to duration, arguably the most significant factor, Won alleges that military leave, like jury duty leave, lasts for fewer than 30 days and is short-term in nature. (*See* Am. Compl. ¶ 65.) For the involuntariness factor, Won alleges that military leave, like jury duty leave, is compulsory in that the "circumstances and conditions necessitating these types of leave do not arise within an employee's discretion." (*Id.* ¶ 64). As other courts have noted, military leave is compulsory in the way described by Won because "guardsmen have no individual voice in selecting the weeks they will be on active duty," rather, "[m]ilitary superiors set the time for training which is both compulsory and short." *Waltermyer*, 804 F.2d at 823. Finally, Won's complaint plausibly satisfies the "purpose" factor set out in 20 C.F.R. § 1002.150(b) by alleging that jury duty and military service share the "common objective of serving the public interest." (*Id.* ¶ 66.)

Amazon disputes Won's analysis of these factors. (*See* Defs.' Mot. at 17.) But the company notably commits a linguistic misstep in

distinguishing the duration of military leave from that of jury duty leave: it equates duration, or the "a portion of time which is measurable or during which something exists, lasts, or is in progress," with frequency, "the number of repetitions of a periodic process in a unit of time." *Duration*, Webster's Third New International Dictionary (1993); *frequency, id.* Frequency is not mentioned in 20 C.F.R. § 1002.150(b) and is not a synonym for duration, but Amazon uses it interchangeably with duration when discussing the amount of time Won must take off compared with a typical juror. (*See* Defs.' Mot. at 17.)

For example, Amazon notes that jury duty and military leave each typically last fewer than two weeks, then shifts to point out the aggregate number of days Won was required to take off because, in terms of frequency, she took leave on a "regular and recurring basis." *Id.* But 20 C.F.R. § 1002.150 does not instruct employers to calculate the total number of days of leave an employee takes; it directs employers to compare the number of days required *per instance* of leave, *i.e.,* the duration of the military and comparable non-military leaves. As Won notes, "[t]he whole point of service in the armed forces is that servicemembers must be prepared to serve whenever they are called up – whether that need is occasional or frequent. Nothing in USERRA says that employers must provide equal treatment unless a servicemember serves too much." (Pl.'s Mem. at 14.)[6] Moreover, even if military leave sometimes did stretch for an extended period, the same could be said for jury service. Although the record does not yet

---

[6] Amazon's conflation of frequency and duration creates dissimilarities where there are none; but Amazon has no problem distinguishing between frequency and duration when describing how favorable its differential pay policy is for servicemembers. (Trans. of Mot. Hr'g. ¶¶ 7-8. ("Amazon pays, up to 52 weeks *per instance* . . . ") (emphasis added)).

permit a fulsome comparison as to duration, Won has plausibly alleged one.[7]

Amazon next argues that Won's application of the voluntariness factor is inapt because military leave is the consequence of an employee's voluntary decision to serve in the armed forces in the first place, whereas all American citizens are "subject to jury duty simply by living in the United States." (Defs.' Mot. at 17.) This point, however, reflects a misreading of 20 C.F.R. § 1002.150(b) and a misunderstanding of the purpose of USERRA. The voluntariness factor is meant to trigger an evaluation of whether an employee has control over when to take their leave, not whether the employee has control over their status as a reservist. *See White*, 987 F.3d at 625 ("Comparability analysis is not affected by the fact that the service-member has voluntarily signed up for military service . . . what matters is an employee's control over the timing of her leave of absence."). To hold otherwise would "impermissibly penalize[] servicemembers for joining the military, in direct contravention of USERRA's core purpose." *Id.*; *see also* 38 U.S.C. § 4301(a).

A full determination of whether the two leaves are comparable awaits either summary judgment or a jury. At this stage, the court must accept the plausible facts as Won pleads them. Rule 12 is not a mechanism to displace discovery with speculation about what might be later revealed. *See Twombly*, 550 U.S. at 556. Until

---

[7] Amazon argues that "common sense" defies a comparison between jury duty (supposedly short) and military leave (supposedly long), but offers little evidence for either claim. The last three trials this court has held have all lasted at least ten days. Amazon calls this "so rare . . . that New York State will automatically disqualify a juror who serves for that long from further service for eight years." (Defs.' Reply at 14.) But if anything that observation supports the opposite of what Amazon says: extended service may actually be *so common* that the State is forced to specifically account for it to prevent jurors from being called for one extended trial after another.

then, Won has alleged enough "factual content" for the court to "draw a reasonable inference" that jury duty and military leave are comparable. *Iqbal*, 556 U.S. at 678.

2. Whether the paid leave scheme Amazon provides for jury duty is more favorable than the differential pay it offers for military leave is an issue of fact.

Factual development similarly remains as to which leave provides more favorable benefits, if either. It is clear to the court, however, that the evidence Amazon has provided does not refute the plausibility of Won's allegation that providing full pay for 10 days for employees on military leave is more favorable than the company's differential payment plan. (*See* Defs.' Mot. 9-10; Ex. 1 (describing the experience of reservists employed at Amazon during the COVID-19 pandemic, but not providing information on how Amazon's approach to military leave compares to their approach to jury duty leave).) In particular, there is an ongoing dispute about how Amazon's time limitations on leave are operationalized; it is unclear whether the 10-day cap for jury duty leave applies per instance or per year. (*See* Defs.' Mot. at 17 (explaining that jury duty rarely lasts over 10 days without elaborating on whether the 10-day cap is per instance of leave); Pl.'s Mem. at 11 (noting that there is "nothing in the record to clarify whether these caps apply *per instance* of leave, or on an annual basis").) Stopping this case from proceeding to discovery would "cut off this analysis too soon." *White*, 987 F.3d. at 625. Until then, Won has sufficiently alleged plausible facts that Amazon treats certain non-military leaves more favorably than military leave. The court therefore declines to dismiss the complaint on this basis. Amazon's motion is DENIED.

### D. Claim Splitting

Amazon next moves to dismiss Won's complaint for claim splitting because this action follows a separate suit Won previously filed against Amazon. (*See* Defs.' Mot. at 18-24.) The court has

26

previously deemed that case "related" to this one but has not considered the claim spitting issue. *See Won v. Amazon Services, Inc.*, No. 20-CV-2811 ("*Won I*") (E.D.N.Y. 2020).

The doctrine of claim splitting is designed to promote procedural efficiency: it allows the district court to control its docket by preventing concurrent duplicative actions. *See Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000) (holding that as "part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit"). Determining whether claim splitting has occurred is fact-intensive and eschews a "rigid test," instead requiring the court "to consider the equities of the situation when exercising its discretion." *Curtis*, 226 F.3d at 138. A colorable claim of duplicative litigation demonstrates that there is substantial overlap between the two cases such that it would be improvident to try them separately. *See The Haytian Republic*, 154 U.S. 118, 124 (1894). The claim splitting inquiry requires the court to assess the similarities between the two cases:

> When the pendency of such a suit is set up to defeat another, the case must be the same. There must be the same parties, or, at least, such as represent the same interests; there must be the same rights asserted and the same relief prayed for; the relief must be founded upon the same facts, and the title, or essential basis of the relief sought must be the same.

*Id.* at 124. Thus, while claim splitting is a distinct doctrine from *res judicata* because it does not require a final judgment on the merits for the first filed suit, the two doctrines require similar analyses. *See Davis v. Norwalk Econ. Opportunity Now, Inc.*, 534 F. App'x 47, 48 (2d Cir. 2013) (noting that though the two doctrines are different, both ask whether the second suit arises from the same transaction as the first).

Since *Haytian Republic*, the meaning of a claim has been broad-ened and defined as a "transaction" which signifies a "factual grouping" or events that form a "litigative unit or entity which may not be split." Restatement (Second) of Judgments § 24 (1982). This more encompassing notion of a "transaction" means that certain successive acts that happen nearly simultaneously or that are substantially similar and "similarly motivated" should be tried in the same action. *Id.* Still, spatiotemporal proximity is not dispositive in determining whether successive events are part of the same transaction, nor is some degree of factual overlap. *See N.L.R.B. v. United Techs. Corp.,* 706 F.2d 1254, 1259 (2d Cir. 1983) (reasoning that "the circumstance that several operative facts may be common to successive actions between the same parties" does not mean that the later brought action is necessarily precluded on claim splitting grounds); *see also Curtis*, 226 F. 3d at 139 (reasoning that "claim preclusion depends" on both the connectedness of the transactions at issue and whether "the same proof is needed to support the claims in both suits").

The more direct question is "whether the facts essential to the second were present in the first." *United Techs. Corp.*, 706 F.2d at 1260. Two cases with separate operative facts that produce dis-tinct causes of action can remain discrete. *Cf.* Restatement (Second) of Judgments § 24(d) ill. (7) (explaining that a plaintiff who was assaulted by his debtor would have two separate causes of action: one to collect on the debt and the other seeking dam-ages from the assault); *see also Davis*, 534 F. App'x at 48 (*citing Proctor v. LeClaire*, 715 F.3d 402 (2d Cir. 2013) (claim preclusion does not apply when the plaintiff is bringing two separate causes of action)). In determining whether two separately filed actions involve discrete transactions, the court should consider factors including: "whether the underlying facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the par-ties' expectations or business understanding or usage."

*Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 90 (2d Cir. 1997).

While it is not in dispute that both of Won's actions filed in this court spring from her employment at Amazon and from rights protected under USERRA, there is disagreement over whether the suits arise from different transactions. (*See* Defs.' Reply at 15; Pl.'s Mem. at 16.) In arguing that this action is duplicative of the first suit, Amazon commits a similar analytical misstep that it does in interpreting the text of 20 C.F.R. § 1002.150(b): it creates factors that are not part of the claim splitting analysis to boot-strap its own argument. Specifically, Amazon takes the proposition that a claim will be precluded if it shares the *same operative facts* with a previously filed suit and transforms it into the proposition that two claims should be brought together if they arise under the *same statute*. (Defs.' Reply at 15 (arguing that the rule against claim splitting applies here because "Ms. Won has already sued the same defendant, in the same court, for an alleged violation of the same law.").) But there is nothing in claim splitting doctrine that asserts that separate actions brought under the same statute must be brought together. That makes sense, because a statute like USERRA is intended to protect a variety of different broadly defined rights; because of USERRA's scope, it is probable that under its protections, the same defendant could have multiple viable causes of action. *See, e.g.*, 38 U.S.C. §§ 4301-4335.

Applying the claim splitting factors to this case, Won's previously filed action is separate and distinct from the claims now presented to the court. In *Won I*, Plaintiff brought an unlawful termination claim, alleging that Amazon wrongfully discriminated and retaliated against her based on her status as a caregiver and as a uniformed member of the military. (*See* Richman Decl. Ex. 2 (Dkt. 22-4) ¶¶ 1-2.) In the present action, Won, on behalf of herself and a putative class, asserts that Amazon's

29

leave policies constitute a violation of 38 U.S.C. § 4316(b). (Am. Compl. ¶¶ 71-72.)

Despite Amazon's assertions to the contrary, the two complaints involved allege separate essential facts. (Defs.' Mot. at 19-20.) It is true that because both suits involve potential violations of USERRA that happened while Won was employed at Amazon, certain facts will necessarily overlap. Such an overlap, however, is insufficient to trigger the claim splitting doctrine; the cases must allege shared critical facts. *United Techs. Corp.*, 706 F.2d at 1260. The chart of overlapping facts Amazon provides in support of its claim splitting argument establish the basic circumstances of Won's employment at Amazon, including when she was employed, her wage, and the dates of the leaves she took while employed. (*See* Defs.' Mot. at 20.) Tellingly, absent from the chart are the essential facts that Won provided in her two complaints that are necessary to establish the separate causes of action.

Inquiring into what was omitted from the chart reveals two distinct sets of facts that are integral to the unique causes of action in the respective cases. The first suit requires evidence of potential animus to military service members, a discriminatory motive, and evidence about the nature of Won's termination. *See, e.g., Staub v. Proctor Hosp.*, 562 U.S. 411, 131 (2011) (establishing an unlawful termination claim under 38 U.S.C. § 4311 requires evidence that an employer's bias against service members was the but-for motivation of an adverse employment action). Accordingly, in *Won I*, Plaintiff alleges facts about her responsibilities as a caregiver, her scheduling restraints, the quality of her work at Amazon, her disciplinary record prior to termination, the hostile treatment she received from Amazon's HR representatives, how that treatment affected her, and the nature of her termination. (*See* Richman Decl. Ex. 2 ¶¶ 19-33, 38-57.)

30

By contrast, Won's amended complaint in this case alleges that Amazon's leave policies violate 38 U.S.C. § 4316(b). Litigating this case will require evidence that would not be provided in Won's first suit: *e.g.*, evidence attesting to the comparability of military leave and other kinds of leave, data accounting for wages and leave timelines of the putative class, and evidence of how Amazon's leave policies have been operationalized since 2004 for military and non-military employees. (Pl.'s Mem. at 11-14.) Therefore, the central facts Won pleads in the second suit are different than those integral to the complaint filed in the first suit: Won's second filed complaint alleges facts about the nature of Amazon's leave policies, what Won was told about the leave policies by those in control of the conditions of her employment, and information about how Amazon compensated Won during the leaves she took. (Am. Compl. ¶¶ 48-73.) In short, this suit's facts allege that Amazon's policy is violative of § 4316(b), whereas the first suit's facts allege animus Won personally experienced because of her status as a caregiver and reservist. (Am. Compl. ¶¶ 48-73; Richman Decl. Ex. 2 ¶¶ 19-33, 38-57.)

Further, the relief demanded in each suit is unique. *Won I* seeks only relief specific to Won, because it seeks to redress the injuries she personally suffered because of the discrimination and adverse employment actions allegedly taken by Amazon. (S*ee* Richman Decl. Ex. 2 at 13-14.) In the second suit, Won seeks relief for the injuries caused to her and the putative class in the form of unpaid wages and lost earnings, liquidated damages, pre- and post-judgment interest, and attorneys' fees and costs. Additionally, she sought (before the court dismissed the claims, *supra*) a declaration that Amazon violated USERRA § 4316(b) in failing to pay the putative class for the short-term military leaves they took during the class period, as well as injunctive relief requiring Amazon to amend its leave policies. (Am. Compl. ¶¶ 2-4.)

Finally, whether the defendants in the two different suits are identical or in privity is a nonissue because *Won I* and *Won II* arise from separate causes of action. (*See* Defs.' Mot. at 22-23.) A privity analysis is necessary when it appears the plaintiff is attempting to relitigate the same cause of action by suing a defendant who was not named in the first suit but was in privity with those named. *Rezzonico v. H & R Block, Inc.*, 182 F.3d 144 (2d Cir. 1999) (holding that "*res judicata* bars subsequent litigation between the same parties and those in privity with them involving the same cause of action"). Here, Won is asserting an entirely different cause of action. Under Rule 18 of the Federal Rules of Civil Procedure, a plaintiff is permitted but not required to join "as many claims as it has against one party" in a single suit. Fed. R. Civ. P. 18(a). Won thus may file and maintain separate suits against Amazon, and the company's motion to dismiss the complaint on this basis is DENIED.

### E.   Proper Defendants

Finally, the court considers Amazon's final motion that Amazon.com, Inc. and Amazon.com Sales, Inc. be dismissed as improper defendants. (Defs.' Reply at 19-20.) The parties do not dispute that Won has plausibly alleged that Amazon.com Services, LLC was her employer and fits within the definition provided in § 4303(4)(A). (*Id.* at 20.) The court concludes that Amazon.com, Inc. and Amazon.com Sales, Inc. should be dismissed because Won failed to adequately plead that Amazon.com Inc. and Amazon.com Sales, Inc. had some authority over her employment, beyond factual "generalities," *In re Parmalat Sec. Litig.*, 383 F. Supp. 2d 616, 619 (S.D.N.Y. 2005), and descriptions of the parent-subsidiary relationship existing between the named defendants. (*See generally* Am. Compl. ¶¶ 13-38.)

To be sure, the meaning of "employer" under USERRA is expansive; Defendants need not be responsible for hiring or firing and

only must have control over some facet of "employment opportunities." *See* 38 U.S.C. § 4303(4)(A)(i); H.R. Rep. No. 103-65(1) at 21 (explaining that § 4303(2)'s definition of "employer" is intended to be "broadly construed" and to encompass nontraditional employer relationships including "those where more than one entity may exercise control over different aspects of the employment relationship"). While there is a "lack of a clear standard for determining whether an entity is an 'employer' within the USERRA context," the *White* court noted that there must be specific evidence that a named Defendant had "some measure of control for purposes of Section 4303(4)(A)." *See White*, 987 F.3d at 627. Notably, the "presence of common officers . . . *alone* does not create liability" as between a parent company and subsidiary. *Id.* (emphasis in original). The complaint must allege that the parent was actively involved in some facet of the plaintiff's employment conditions. *Id.* (reasoning that though the standard to be a qualifying employer under USERRA requires that an employer had "control over the plaintiff's employment opportunities writ large," the complaint must still evidence the active role all named defendants played in establishing conditions of employment that impacted the plaintiff).

Won asserts that all Defendants collectively had some "control over" her and the rest of the putative class's employment conditions, as required by 38 U.S.C. § 4303(4)(A), but she does not specifically allege particular aspects of control by each entity. Rather, Won collapses all three into one and then makes the general claim that they "control the terms and conditions of their employment including but not limited to hiring, firing, promotions, discipline, directing their work, [and] setting their rate of pay, including pay for leaves of absences and setting their schedule." (Am. Compl. ¶ 31.) Even upon information and belief, the facts alleged do not inform the court as to which "employment-related responsibilities" correspond to which named defendant. 38 U.S.C. § 4303(4)(A)(i). Won instead argues that each entity

takes the same approach to their work and employees, because they are all influenced by CEO Jeff Bezos's "philosophies" and are each bound to follow "employment initiatives." (*Id.* ¶¶ 24, 27.) The only particularized allegation that the Won makes is that Amazon.com, Inc. and Amazon.com Sales, Inc. are properly named because they share officers with Amazon.com Services, LLC. (*Id.* ¶¶ 21-23.) Beyond this, Won does not plead any specific information indicating the role these defendants played in Won's specific employment. The court therefore holds that the complaint's general, conclusory assertions about Amazon.com, Inc. and Amazon.com Sales Inc. are insufficient to establish them as parties to the case. *See, e.g.*, *McSweeney v. City of Bell*, No. 08-CV-7006 (JFW), 2009 WL 10700299 (C.D. Cal. Mar. 13, 2009) (a USERRA violation does "not rely on group pleading allegations but shall specifically allege the conduct of each defendant that Plaintiff contends violates USERRA").

Amazon.com Inc. and Amazon.com Sales Inc. are therefore DISMISSED from the case without prejudice. Won is granted leave to amend her complaint to name (or rename) the proper defendants if other facts later emerge.

### IV.  CONCLUSION

For the foregoing reasons, Amazon's motion to dismiss Won's amended complaint is DENIED. Amazon.com Inc. and Amazon.com Sales Inc. are DISMISSED from the case without prejudice. Won's claims for injunctive and declaratory relief are both DISMISSED without prejudice.

SO ORDERED.


Dated:      Brooklyn, New York
            August 19, 2022

                                          /s/ Nicholas G. Garaufis
                                        NICHOLAS G. GARAUFIS
                                        United States District Judge