UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CAONAISSA WON, individually and on behalf
of other persons similarly situated,

                            Plaintiff,

         -against-

AMAZON.COM SERVICES LLC,

                          Defendant.

**MEMORANDUM & ORDER**
**21-CV-2867 (NGG) (LKE)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Caonaissa Won brings this action, on behalf of herself and other persons similarly situated, against Defendant Amazon.com Services, LLC ("Amazon" or "Defendant") for alleged violations of the Uniform Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. § 4301 *et seq.* (Amended Complaint ("Am. Compl.") (Dkt. 18).) Plaintiff moved to certify classes pursuant to Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, to be appointed Class Representative, and to have her counsel appointed Class Counsel. (*See* Pl.'s Memorandum of Law in Support of Pl.'s Motion for Class Certification ("Mot.") (Dkt. 54-1).) Amazon opposes Won's Motion. (Def.'s Memorandum of Law in Opposition to Motion for Class Certification ("Opp.") (Dkt. 54-27).) Won also filed a Reply responding to Amazon's Opposition. (Pl.'s Reply Memorandum of Law in Support of Pl.'s Mot. ("Reply") (Dkt. 54-45).) The court referred Plaintiff's motion to Magistrate Judge Lara K. Eshkenazi for a Report and Recommendation ("R&R") pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(b)(1) of the Federal Rules of Civil Procedure. (June 21, 2024 Order Referring Mot.) Judge Eshkenazi issued the annexed R&R on February 3, 2025, recommending that the court grant Plaintiff's request to certify a class

under Rule 23(b)(3) but deny Plaintiff's request to certify a class under Rule 23(b)(2). (R&R (Dkt. 62) at 26.) Judge Eshkenazi also recommends that the court appoint Plaintiff as Class Representative and appoint her counsel as Class Counsel under Rule 23(g). (*Id.*) The parties timely objected to the R&R. (*See generally* Amazon Obj. to R&R (Dkt. 65); Won. Obj. to R&R (Dkt. 63).) For the reasons set forth below, the court OVERRULES in part and SUSTAINS in part the parties' objections, and ADOPTS in part and REJECTS in part the R&R. Plaintiff's motion is GRANTED in part and DENIED in part.

## I. BACKGROUND

### A. Statutory and Regulatory Framework

Under USERRA, "a person who is absent from a position of employment by reason of service in the uniformed services shall be . . . entitled to such other rights and benefits not determined by seniority as are generally provided by the employer of the person to employees having similar seniority, status, and pay who are on furlough or leave of absence." 28 U.S.C. § 4316(b)(1). Pursuant to the regulations implementing 28 U.S.C. § 4316(b)(1), "[i]f the non-seniority benefits to which employees on furlough or leave of absence are entitled vary according to the type of leave, the employee must be given the most favorable treatment accorded to any comparable form of leave when he or she performs service in the uniformed services." 20 C.F.R. § 1002.150(b). When comparing leave policies, the three relevant factors are duration, purpose, and voluntariness of the leave. *Id.*

### B.  Factual Background[1]

#### 1.  Amazon's Leave Policies

Amazon maintains several different policies for employees who need to take short-term absences from work, including for military service, jury service, and bereavement.

Amazon changed its Military Leave of Absence ("MLOA") policy twice in the last 13 years. From 2012 to 2016, Amazon paid "[r]egular full-time and regular part-time" employees who were ordered by the military to participate in "annual active duty training" for any difference in the pay they received from the miliary and the pay they would normally receive from Amazon, provided that their military pay was lower than their Amazon pay, for up to 80 hours per year. (*See* Sealed Amazon Former MLOA Policy (Dkt. 55-10) at 1.) These employees were also eligible for unpaid leave if called into other forms of temporary military service. (*Id.*) In 2016, Amazon removed the 80-hour cap, allowing up to a full year of differential pay "per event (or the duration of the Military [Leave of Absence], whichever is less)." (*See* Sealed MLOA Policy ("MLOA Policy") (Dkt. 55-12) at 1.)[2]

Amazon's Jury Leave Policy generally provides for up to 10 days of paid leave for each occasion employees are called to serve on a jury or as a witness to court proceedings. (*See* Sealed Jury Leave Policy ("Jury Leave Policy") (Dkt. 55-9) at ECF p.4.)[3] Unlike Amazon's MLOA Policy, under which Amazon pays only the

---

[1] Unless otherwise indicated, the following facts are drawn from the Amended Complaint. For purposes of this class certification motion, the facts alleged in the Amended Complaint are assumed to be true. *See Shelter Realty Corp. v. Allied Maint. Corp.*, 574 F.2d 656, 661 n.15 (2d Cir. 1978).

[2] The 2016 MLOA Policy was the policy in effect during Won's employment at Amazon.

[3] While the availably leave days varies slightly by state and the employees' work group, employees in work groups F, H, and R—the only work groups

difference between an employee's military wage and the employee's Amazon wage if the employee's Amazon wage is greater than the employee's military wage, Amazon's Jury Leave Policy applies without regard to any compensation employees might receive for their jury service. (*See id.* ("[Employees] may retain all allowances received from the court for [their] jury or witness duty service.").)

Amazon's Bereavement Leave Policy provides for up to three days of paid leave for full-time, reduced-time, and part-time employees to allow an employee to grieve the death of a person in the employee's "immediate family." (Sealed Bereavement Leave Policy (Dkt. 55-5) at ECF p. 1.)

Amazon employees can request paid jury or bereavement online via Amazon's internal web platform. (*See* Mot. at 7-8.) However, to request military leave, Amazon employees must make a request "by email or fax, with supporting documentation, to Amazon's Disability and Leave Services department." (*Id.* at 8.)

### 2. Won's Amazon Employment and Military Leave

Won began working as an Amazon fulfillment associate in the shipping department at an Amazon facility in New York on July 1, 2019, earning $17.50 per hour. (*See* Am. Compl. ¶¶ 48-49.) One month later, Won took military leave from August 11, 2019 to September 6, 2019.[4] (*Id.* ¶¶ 51-52.) Initially, Amazon did not pay Won for her military leave, due to what it describes as an

---

included in Won's proposed class, (*see* Mot. at 9)—are generally entitled to 10 days leave under the Jury Leave Policy, (*see generally* Jury Leave Policy).

[4] Won alleges that she took two consecutive shorter leaves, from August 11, 2019 to August 21, 2019 and from August 22, 2019 to September 6, 2019, not one longer leave from August 11, 2019 to September 6, 2019. (Am. Compl. ¶¶ 51-52.) As discussed in greater detail *infra*, Section III.A., the court concludes that Won took one continuous military leave of absence from August 11, 2019 to September 6, 2019.

administrative error. (*Id.* ¶ 53; *see* Amazon July 23, 2021 Pre-Motion Conference Ltr. (Dkt. 15) at 2 n.2.) However, in July 2021, Amazon mailed Won a check for the differential pay pursuant to Amazon's MLOA Policy. (Won Depo. Tr. Excerpts Pt. 2 (Dkt. 60-2) 204:18-207:6.) Won did not cash the check because "it came a little too late . . . after this suit was started." (*Id.* 206:15-22.) *See Won v. Amazon.com, Inc.*, No. 21-CV-2867 (NGG) (RER), 2022 WL 3576738, at *1 (E.D.N.Y. Aug. 19, 2022) (dismissing Won's injunctive and declaratory relief claims).

### C. Procedural Background

As the parties have not objected to the procedural background as outlined in the R&R, the court refers to the R&R for the case's complete procedural history. (*See* R&R at 3.) *Raysor v. United States*, No. 3-CV-5418 (SLT) (JMA), 2014 WL 4658972, at *7 (E.D.N.Y. Sept. 17, 2014) ("A district court . . . is not required to review the factual or legal conclusions of the magistrate judge as to those portions of a report and recommendation to which no objections are addressed."). Won filed the instant case against Amazon.com, Inc., Amazon.com Services LLC, and Amazon.com Sales, Inc., on May 20, 2021, alleging one cause of action: violation of USERRA, 38 U.S.C. § 4316(b)(1), for failure to provide paid short-term military leave while providing other forms of paid short-term leave. (*See* Am. Compl. ¶¶ 74-83 (citing 38 U.S.C. § 4316(b)(1)).) Upon Amazon's motion, the court dismissed Amazon.com, Inc. and Amazon.com Sales, Inc. from the case without prejudice, dismissed Won's claims for injunctive and declaratory relief, and denied Amazon's motion to dismiss for lack of standing and failure to state claim. *See Won*, 2022 WL 3576738, at *1. Won now moves to certify a class, to be appointed Class Representative, and to have her counsel appointed Class Counsel. (*See generally* Mot.) Amazon opposes the motion. (*See generally* Opp.) The court referred the motion to Magistrate

Judge Eshkenazi for an R&R. (*See* June 21, 2024 Order Referring Mot.)

On January 16, 2025, Judge Eshkenazi heard oral argument. (*See* Min. Entry Dated January 21, 2025.) On February 3, 2025, Judge Eshkenazi issued her R&R. (*See generally* R&R.) Judge Eshkenazi determined that Won met all the Rule 23(a) requirements for class certification. (*See id.* at 6-18.) Judge Eshkenazi also reasoned that two of Won's three proposed common questions of law and fact were indeed common: (1) whether paid leave is a "right or benefit" under USERRA and (2) whether the MLOA Policy is comparable to the Jury Leave Policy. (*See* R&R at 14.) Judge Eshkenazi rejected Won's third common question concerning her "additional prerequisites" theory because she failed to plead facts sufficient to support that question. (*See id.* at 7-14.) Ultimately, Judge Eshkenazi recommended that the court deny certification of Won's proposed Rule 23(b)(2) declaratory relief class, but grant certification of her Rule 23(b)(3) damages class. (*See id.* at 19-26.) The parties timely objected to the R&R. (*See generally* Amazon Obj. to R&R; Won. Obj. to R&R.)

On February 27, 2025, the court reserved decision on Won's class certification motion in anticipation of the Supreme Court's decision in *Lab'y Corp. of Am. Holdings v. Davis*, No. 24-304 (U.S.), a case concerning standing jurisprudence for class actions. (*See* February 27, 2025 Order Reserving Judg.) However, on June 5, 2025, the Court determined that the writ of certiorari was improvidently granted and did not issue an opinion. *See Lab'y Corp. of Am. Holdings v. Davis*, 605 U.S. 327 (2025) ("*LabCorp*").[5] Accordingly, Won's class certification motion is once again pending before this court, along with the parties' supplemental letters, which largely reiterate their initial objections to the R&R. (*See*

---

[5] Justice Brett M. Kavanaugh issued a dissenting opinion. *See LabCorp,* 605 U.S. at 328-34.

*generally* Won June 9, 2025 Ltr. (Dkt. 75); Amazon June 12, 2025 Ltr. (Dkt. 77); Won June 17, 2025 Ltr. (Dkt. 78).)

### D. Proposed Class

Plaintiff's proposed class is "all current and former employees of Amazon in work groups F, H, or R who took one or more short-term military leaves of absence of no more than 30 days at any time between April 1, 2012 and the date of judgment in this action." (Mot. at 9.)[6]

## II. LEGAL STANDARD

Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)).[7]

> As an initial matter, Rule 23(a)'s four "prerequisites" require (1) numerosity ("the class is so numerous that joinder of all members is impracticable"); (2) commonality ("there are questions of law or fact common to the class"); (3) typicality ("the claims or defenses of the representative parties are typical of the claims or defenses of the class"); and (4) adequacy of representation ("the representative parties will fairly and adequately protect the interests of the class").

*In re Am. Exp. Anti-Steering Rules Antitrust Litig.*, Nos. 11-MD-2221 (NGG) (RER), 13-CV-7355 (NGG) (RER), 2015 WL

---

[6] Work group F is comprised of Amazon's regular full-time employees, group H is comprised of Amazon's part time employees, who generally work 20-29 hours per week, and group R is comprised of Amazon's reduced-time employees, who generally work 30-39 hours per week. (*See* Def.'s Resps. to Pl.'s Second Set of Interrogs. (Dkt. 54-25) at 5-6.) Amazon pays employees in all three groups through Amazon payroll; and employees in all three groups can be salaried or hourly. (*Id.* at 6.)

[7] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

4645240, at *9 (E.D.N.Y. Aug. 4, 2015) (quoting Fed. R. Civ. P. 23(a)). The Second Circuit has also recognized an "implied requirement of ascertainability." *See Brecher v. Republic of Arg.*, 806 F.3d 22, 24-25 (2d Cir. 2015). "A class is ascertainable when defined by objective criteria that are administratively feasible and when identifying its members would not require a mini-hearing on the merits of each case." *Id.*

Once these prerequisites are met, "the class must also be properly certified under Rule 23(b)(1), (b)(2), or (b)(3)." *In re Am. Exp.*, 2015 WL 4645240 at *9. A Rule 23(b)(2) class requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). A Rule 23(b)(3) class "demands that common questions of law or fact predominate over individual questions that pertain only to certain class members." *Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 77 F.4th 74, 85 (2d Cir. 2023). The plaintiff "bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010).

As a general matter, the Second Circuit gives Rule 23 a "liberal rather than restrictive construction, and courts are to adopt a standard of flexibility." *Candelaria v. Conopco, Inc.*, No. 21-CV-6760 (NCM) (TAM), 2025 WL 1826454, at *3 (E.D.N.Y. July 2, 2025). "[I]t seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification." *Hasemann v. Gerber Prods. Co.*, 331 F.R.D. 239, 254 (E.D.N.Y. 2019). Rule 23 analysis must be "rigorous," *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982), but "[t]o deny a class action simply because all of the allegations of the class do not fit together like pieces in a jigsaw puzzle would destroy much

of the utility of Rule 23," *Cortigiano v. Oceanview Manor Home for Adults*, 227 F.R.D. 194, 203 (E.D.N.Y. 2005).

Further, the court must "resolve[] factual disputes relevant to each Rule 23 requirement." *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006); *cf. Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013) ("[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action."). In weighing proffered evidence to resolve these factual issues, the court applies a preponderance of the evidence standard. *See Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier, Inc.*, 546 F.3d 196, 202 (2d Cir. 2008).

Finally, when parties submit timely objections to a report and recommendation, the court reviews *de novo* those parts of the report and recommendation to which the parties object. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). Upon *de novo* review, the court "may accept, reject, or modify, in whole or in part," the magistrate judge's findings. 28 U.S.C. § 636(b)(1).

## III. DISCUSSION

### A. Won's Leave

As a preliminary matter, the court addresses a key factual dispute between the parties: whether Won's military leave of absence was one extended leave (from August 11, 2019 to September 6, 2019) or two consecutive shorter leaves (from August 11, 2019 to August 21, 2019 and from August 22, 2019 to September 6, 2019). (*See Compare* Am. Compl. ¶ 52; Jan. 16, 2025 Hr'g Transcript ("Jan. 16 Hr'g Tr.") (Dkt. 61) 5:15-24.) In its Opposition, Amazon calculated the amount Won would receive under either theory. (*See* Opp. at 8-9.) Under a one-leave theory, Won would

earn $3,508.73 under Amazon's MLOA Policy and $3,489.61 under Amazon's Jury Leave Policy.[8] (*See id.* at 9.) However, under a two-leave theory, Won would earn the same $3,508.73 under Amazon's MLOA Policy and $4,539.61 under Amazon's Jury Leave Policy. (*See id.*) In other words, comparing Amazon's MLOA Policy to its Jury Leave Policy, Won is $19.12 *better off* under the MLOA Policy if she took one leave and is $1,030.88 *worse off* under the MLOA Policy if she took two leaves. Amazon contends that Won took one leave for the entire period between August 11, 2019 and September 6, 2019 (*See id.* at 8-10.)

Whether Won took one or two leaves significantly impacts her comparative payouts under the Jury Leave Policy and MLOA Policy. This fact also dictates whether she suffered an injury sufficient to confer standing under Article III of the Constitution and her adequacy as a potential class representative. (*See* Opp. at 8 ("[T]hat assertion [that Won earns less under Amazon's MLOA Policy than Amazon's Jury Leave Policy] hinges on a disputed, highly individualized factual question[.]").) *See also TransUnion LLC v. Ramirez*, 594 U.S. 413, 427-29 (2021) ("[A]n injury in law is not an injury in fact. . . In sum, the concrete-harm requirement is essential to the Constitution's separation of powers."). Accordingly, before assessing the merits of Won's Motion, the court first resolves this factual dispute. *See In re In re Initial Pub. Offerings*, 471 F.3d at 41. At the class certification stage, the court reviews "whatever underlying facts are relevant," including "affidavits, documents, or testimony[.]" *Teamsters*, 546 F.3d at 204.

The court first considers the evidentiary support for Won's assertion that she took "two short-term military leaves of absence."

---

[8] The court, like the parties, adopts Amazon's Jury Leave Policy, offering up to 10 days of full pay, as the USERRA comparator for the purposes of this Memorandum and Order, but makes no determination as to whether the Jury Leave Policy is the comparator as a matter of law.

(*See* Mot. at 2). Won cites only her response to Amazon's inter-rogatories, which simply restate the assertion. (*See* Pl.'s Resps. to Def.'s First Set of Interrogs. (Dkt. 54-6) at 6 ("Plaintiff was re-quired to take a short-term military leave from approximately August 11, 2019 to August 21, 2019, and was required to take a second short-term military leave from approximately August 22, 2019 to September 6, 2019.").) When Judge Eshkenazi asked about the "factual basis" for this assertion, Won's counsel de-murred. (*See* Jan. 16 Hr'g Tr. 5:3-4 ("That is a fair question to ask. It's not a question that needs to be decided at this stage.").) When Judge Eshkenazi pressed further, noting that this question "goes to [Won's] representation of the class," (*id.* 5:9-10), Won's counsel explained that the answer to the question is immaterial because Won would still be representative of the class as pro-posed given that the combined period of her two leaves was less than 30 days. (*See id.* 6:3-11.) Won's counsel then argued that Won's injury arose from the *non*payment rather than the *under*-payment of her military leave pay. (*See id.* 6:11-15 ("[S]he got no pay. She never even got differential pay. So she has suffered an injury. She didn't receive any pay for her military leave.").) As the court explained previously, in Won's case, her injury in fact and statutory injury are one and the same. *See Won*, 2022 WL 3576738, at *3 (rejecting Amazon's argument that Won did not have standing at the pleading stage as to her claim for damages). During the January 16, 2025 hearing, Won's counsel did not point to any evidence supporting Won's claim that she took two leaves. (*See generally* Jan. 16 Hr'g Tr.)

Won's Department of the Army military orders dated June 4, 2019 indicate that her training would last for a period of "15 duty day(s)," and that she was to report to Fort Pickett, Virginia no later than August 11, 2019, implying an absence from her Ama-zon employment until at least August 26, 2019. (*See* Sealed Won Military Orders (Dkt. 55-24) at 1.) Ultimately, Won's own testi-mony regarding the period in question is most illuminating to the

court. (*See* Won Depo. Tr. Excerpts Pt. 1 (Dkt. 55-20) 216:3-218:22.) Won described "two sets of orders": a 15-day training period at Fort Pickett, followed by *additional* "trail team" duty days where the Army tasked Won with "restoration duties." (*Id.* 216:7-217:24.) Won testified that the location and duration of the second orders depended "on the training and the extent of the restoration that's needed." (*Id.* 218:11-15 ("They may need you for 10 days, they may need you for five days after.").) Most critically, when asked if she knew in advance of the training whether she would be on the trail team, Won answered in the affirmative. (*Id.* 217:9-15). Despite the uncertainty of the second leave's length, Won knew her leave would be 15 days *at minimum*, and most likely would be a total of between 20 to 25 days, depending on the duration of her "trail team" assignment. (*See id.* 216:3-217:24.)

While Won's military leave might have been for two consecutive assignments, the second assignment immediately followed the first 15-day assignment, and both assignments were directly related. (*See id.* 216:3-218:22.) She received the two sets of orders at the same time, meaning she was aware that there was no possibility of returning to work at Amazon in between the two assignments. (*Id.*) Accordingly, the court finds that Won took one continuous military leave of absence from August 11, 2019 to September 6, 2019.

### B. Rule 23

The court first addresses Rule 23(a), which includes the certification requirements for all class types. The court then turns to the specific class types pursuant to which Won seeks certification. *See* Fed. R. Civ. P. 23.

### 1. Rule 23(a)

#### a.  *Numerosity*

The first requirement under Rule 23(a) is numerosity: the proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[T]here is no magic minimum number that establishes numerosity." *Westchester Indep. Living Ctr., Inc. v. State Univ. of N.Y., Purchase Coll.*, 331 F.R.D. 279, 288 (S.D.N.Y. 2019). But in general, numerosity is "presumed for classes larger than forty members." *Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014). Based on data produced by Amazon, Won posits that there are "approximately 9,422 Class Members for the time period March 2018 through November 2022." (Mot. at 10 (citing Declaration of Dylan Marlborough ("Marlborough Decl.") (Dkt. 54-2) ¶ 8); *see also* Marlborough Decl. ¶¶ 3, 6.) Amazon does not contest numerosity. (*See generally* Opp.) Accordingly, the court finds Plaintiff's class sufficiently establishes numerosity under Rule 23(a)(1).

#### b.  *Commonality*

The second requirement under Rule 23(a) is commonality: there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Rule 23(a)(2) does not require all class members or claims to be identical, but there must be "some unifying thread among the members' claims that warrants class treatment." *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 156 (S.D.N.Y. 2008). However, the plaintiff must "demonstrate that the class members have suffered the same injury." *Wal-Mart*, 564 U.S. at 350. Won proposes three common questions: (1) "whether paid leave is a 'right' or 'benefit'" under USERRA; (2) "whether short term military leave is comparable to jury leave"; and (3) "whether Amazon offered paid short-term military leave on a comparable basis with other paid leave without imposing additional prerequisites." (*See* Mot. at 12-14.)

13

Judge Eshkenazi reasoned that the first two questions were sufficient to meet the commonality requirement of Rule 23(a)(2). (*See* R&R at 14.) As to Won's first purely legal question (*i.e.*, whether paid leave is a "right" or "benefit" under USERRA), Judge Eshkenazi recognized that the court had previously determined that paid leave was a "right" or "benefit" under USERRA. (*See* R&R at 8 (citing *Won*, 2022 WL 3576738, at *9).) And other courts share the view that this question is common for USERRA plaintiffs. *See, e.g., Clarkson v. Alaska Airlines Inc.*, No. 19-CV-5, 2020 WL 4495278, at *4 (E.D. Wash. Aug. 4, 2020) (determining that "whether paid leave is one of the rights and benefits that must be provided equally to employees on military leave under USERRA" was a common legal question), *class decertified on other grounds*, 2020 WL 13311693 (E.D. Wash. Nov. 3, 2020); *Baker v. United Parcel Serv., Inc.*, No. 21-CV-114, 2023 WL 4355333, at *3 (E.D. Wash. July 5, 2023) (same); *Huntsman v. Southwest Airlines Co.*, No. 19-CV-83, 2021 WL 391300, at *4 (N.D. Cal. Feb. 3, 2021) (same). As to Won's second proposed common question (*i.e.*, whether short-term military leave is comparable to jury leave), Judge Eshkenazi reasoned that it was a common question because "[s]hort-term military leave and jury duty leave are employment policies that apply equally to the proposed class members." (R&R at 8.) Finally, Judge Eshkenazi rejected Won's third proposed question (*i.e.*, whether Amazon offered paid short-term military leave on a comparable basis with other paid leave without imposing additional prerequisites) because Won pleaded "no specific facts in her Amended Complaint that elucidate this theory of liability." (*Id.* at 13.)

Amazon raises several objections to Judge Eshkenazi's recommended findings. (*See generally* Opp.; Amazon Obj. to R&R at 10-11.) While Amazon does not specifically object to the first purely legal question, it argues that comparing its leave policies is an exercise "rife with individual inquires." (Opp. at 12.) *First*, it argues that the duration, purpose, and voluntariness of each

14

employee's military leave varies widely. (*See id.* at 12 (comparing average military leave durations across states), 13 (noting that the purpose of leave is "subjective" and that there is "a range of experiences with respect to employees' ability to choose when to take military leave").) *Second,* Amazon argues that these questions do not "generat[e] common *answers*" as to whether certain class members are better or worse off under Amazon's current MLOA Policy versus its Jury Leave Policy. (Amazon Obj. to R&R at 11 (quoting *Wal-Mart,* 564 U.S. at 350).) Amazon argues that unlike other cases that have compared leave policies under USERRA where the defendant offered no pay for military leave, comparing Amazon's leave policies involves assessing so many individual variables (*e.g.,* an individual's pay rates at Amazon and the military) that it frustrates commonality. (*See id.* (citing *Clarkson v. Alaska Airlines, Inc.,* 59 F.4th 424, 431 (9th Cir. 2023); *Baker,* 2023 WL 4355333, at *1).) Finally, Amazon claims that both Won and the R&R adopt what it characterizes as a "flawed understanding of USERRA" that in turn "color[s] the analysis of the requirements for class certification," including commonality. (*Id.* at 8, 10-11.) This flawed understanding, Amazon argues, results in a USERRA comparison that pits its current MLOA Policy against a policy that would entitle Plaintiff to the full pay for the first 10 days of leave then differential pay thereafter, a "Frankenstein preferential treatment policy that was never in effect." (*Id.* at 7.)

The court reiterates its earlier finding that "'rights and benefits' in 38 U.S.C. § 4316(b) . . . encompass paid leave." *Won,* 2022 WL 3576738, at *9. The court agrees with Amazon that, to the extent that the Jury Leave Policy is the comparable policy, USERRA would require Amazon to provide up to 10 days of full

15

pay *per instance* of leave, mirroring the Jury Leave Policy.[9] This is exactly the comparison the second common question seeks to pose. The presence of individual variables (*e.g.*, an individual's pay rates at Amazon and the military) does not frustrate the single common variable with which USERRA is concerned: the presence of a gap between a non-seniority-based "right" or "benefit" offered to employees that is superior to what is offered to employees who serve in the military. The commonality arises from the *presence* of a difference between payouts under the different leave policies; the *amount* of the difference will be determined at the damages stage. Accordingly, the court finds that there are two common questions of law and fact, satisfying the commonality requirement of Rule 23(a)(2).

    *c.  Typicality*

The third requirement under Rule 23(a) is typicality: "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The plaintiff must show that "each class member's claim arises from the same course of events and each class member makes similar

---

[9] Won argues that Amazon's "project of comparing its existing benefit to the relief Plaintiff seeks misses the point," and points out that "[n]othing stops [Amazon] from continuing to provide differential pay for longer leaves," after the 10 days of paid leave have expired. (Reply at 2.) The court rejects Won's framing of the analysis. USERRA requires only that service members receive "the most favorable treatment accorded to any comparable form of leave." 20 C.F.R. § 1002.150(b). If, as Won asserts, the Jury Leave Policy is that "comparable form of leave," then, under USERRA, she is entitled to no more pay than what would be provided under that policy. Judge Eshkenazi correctly applied the policy comparison analysis required under USERRA in her finding of commonality. (*See* R&R at 12 ("As Plaintiff explained at oral argument, she is not asking the court to find that Amazon cannot offer more benefits under USERRA than what Amazon offers employees on jury duty leave. Rather, Plaintiff's claim is based on the premise that the policy Amazon has applied to short term military leaves is not the most favorable treatment that it affords to the people who are taking leaves.").)

legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009).

Won's arguments for typicality flow from her commonality arguments: "she challenges the same uniform policies and practices." (Mot. at 15.) Amazon fixates on Won's individual injury (or lack thereof), but the court discusses this *infra* at Section III.B.1.d. (*See* Opp. at 14.) More broadly, Amazon argues that the various leave policies referenced by Won across three classes of employees frustrates typicality because different classes of employees within Won's proposed class accrue different leaves at different rates and for different purposes. (*See* Opp. at 14 (citing *Baker*, 2023 WL 4355333, at *3-4).)

The class members' injuries here arise from the same course of events. The court concurs with Judge Eshkenazi's reasoning that "[Amazon's] employment policies apply equally to each member of the proposed class, including Plaintiff." (R&R at 16.) Unlike in *Baker*, where the employees accrued paid leave at different rates based on whether they were full-time or part-time, "the amount of jury duty leave provided by [Amazon] is uniform across the proposed class, regardless of working group or whether an employee works part-time or full-time." (*Id.* at 15-16 (discussing *Baker*, 2023 WL 4355333, at *3).) As explained *supra* in Section III.B.1.b, the fact that the Amazon policy that allegedly violates USERRA involves differential payment, rather than nonpayment, does not detract from the typicality of all servicemembers who allegedly receive less than they are entitled to; as this difference results from a common policy, it creates a gap that is typical of the class. Accordingly, Won's claims are typical because she is subject to the same employment practice that affects the broader class. (*See id.* at 16 (citing *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993) ("When it is alleged that the same alleged unlawful conduct was directed at or affected both the named

plaintiff and the class sought to be represented, the typicality requirement is usually met.")).)

### d. Adequacy

The fourth and final Rule 23(a) requirement is adequacy: "the representative parties [must] fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Representatives must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 594-95 (1997). This inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Id.* at 625. The court must determine whether "1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.,* 502 F.3d 91, 99 (2d Cir. 2007). "[P]laintiffs in a class action cannot represent a class of whom they are not a part[.]" *Irvin v. Harris,* 944 F.3d 63, 71 (2d Cir. 2019). Finally, the court must consider the adequacy of class counsel based on the following factors: (i) "the work counsel has done in identifying or investigating potential claims in the action"; (ii) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action"; (iii) "counsel's knowledge of the applicable law"; and (iv) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)

Amazon argues that Won cannot satisfy Rule 23(a)(4)'s adequacy requirement because she is better off under its current MLOA Policy than she would be under its Jury Leave Policy and therefore did not suffer an injury. (Amazon Obj. to R&R at 18-21.) It is important to distinguish the two "injuries" in question. *First,* there is the USERRA injury necessary for statutory standing. As Judge Eshkenazi reasoned, a class member is injured under USERRA "if they took short-term military leave of up to ten days

and either (1) received no pay from Amazon for those days, or (2) received differential pay from Amazon for those days." (*See* R&R at 23 (quoting Mot. at 20).)[10] "In either situation, if Plaintiff proves her theory of liability, the damages to potential class members would flow from the same injury—Plaintiff's claim that Amazon violated USERRA by not offering full paid leave for short-term military leave while offering full paid leave for a comparable leave, such as jury duty." (*Id.*) While Amazon insists that its MLOA Policy requires individualized adjudication because each employees' pay is a function of both Amazon's and the military's daily wages, (*see* Amazon Obj. to R&R at 8, 11, 16), this reasoning conflates each individual class member's *damages* with the ability to certify a common question for *liability*. Even though the duration of employees' leave may differ, the nature of their respective USERRA injuries is uniform: because the MLOA Policy pays less than a full day's wages, the statutory injury is clear. "Defendant's policy itself creates the same classwide injury for each class member." (R&R at 24-25.)

*Second,* there is the injury in fact required under Article III of the Constitution: class members must have suffered "concrete harm." *TransUnion*, 594 U.S. at 417; *Frank v. Gaos*, 586 U.S. 485, 491 (2019) ("Article III standing requires a concrete injury even in the context of a statutory violation"). Here, that would mean that class members are financially worse off under the application of Amazon's MLOA Policy than they would be under another Amazon leave policy. Under Amazon's various leave policies, the length of leave, the applicable policy, and the class of employee determines how much Amazon pays the employee during their leave and thus determines whether there is a concrete injury. (*See generally* MLOA Policy, Jury Leave Policy, Bereavement Leave Policy.)

---

[10] Because Amazon provided Won with a check for differential pay, Won likely falls into the latter category.

Won's alleged inadequacy forms the bulk of Amazon's arguments against her motion: "[t]he class is thus divided by an intractable internal conflict" because "a significant portion of the putative class (including Ms. Won herself) is likely to be financially better off under Amazon's uncapped differential-pay policy for military leave." (Amazon Obj. to R&R at 12.) In support of this argument, Amazon relies primarily on *TransUnion*, which dealt with the issue of Article III standing in the context of a Rule 23(b)(3) class. (*See* Amazon June 12, 2025 Ltr. at 1-2.) 594 U.S. at 442. In particular, *TransUnion* addressed the question of whether, after a defendant is found liable, uninjured class members can receive damages. 594 U.S. at 417-18. The Supreme Court ruled that because the personal information of 6,332 of the 8,185 class members (*i.e.*, 77% of the class) was not actually disseminated unlawfully to third parties in violation of the Fair Credit Reporting Act, these class members lacked a concrete injury and were not entitled to share in the $60 million jury verdict. *Id.* at 417-18, 422. The Court reasoned that even if plaintiffs prove a statutory violation, they must still demonstrate Article III standing. *Id.* at 427-30 ("[A]n injury in law is not an injury in fact. . . . In sum, the concrete-harm requirement is essential to the Constitution's separation of powers."); *see also Gaos*, 586 U.S. at 491. Amazon argues that because "every class member must have Article III standing in order to recover individual damages," certifying a class with uninjured members "transgresses this limitation." (Amazon Obj. to R&R at 19 (citing *TransUnion*, 594 U.S. at 431); Amazon June 12, 2025 Ltr. at 2 (same).) In other words, Amazon contends that *TransUnion*'s bar on uninjured members receiving relief on the "back-end" must mean that these uninjured class members have no standing to litigate on the "front-end". (Amazon June 12, 2025 Ltr. at 2.) Won disagrees on the scope and applicability of *TransUnion*, arguing that Amazon's reading goes far beyond the actual holding in *TransUnion*, which, she argues,

was limited to damages and did not extend to class certification.[11] (*See* Won June 17, 2025 Ltr. at 1.)

Given the parties' disagreements on the holding of *TransUnion*, they then turn to Second Circuit precedent to support their respective positions. (*See generally* Amazon June 12, 2025 Ltr. (citing *Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006); Won June 17, 2025 Ltr. (same)) Amazon relies on the *Denney* court's statement that "no class may be certified that contains members lacking Article III standing." (Amazon Obj. to R&R at 19 (quoting *Denney*, 443 F.3d at 264).) Won instead points to a post-*TransUnion* opinion issued in 2022, where the Second Circuit took issue with how "[s]ome may interpret" the specific line in *Denney* cited by Amazon. *See Hyland v. Navient Corp.*, 48 F.4th 110, 118, 118 n.1 (2d Cir. 2022). In *Hyland,* the Second Circuit reiterated its explanation from *Denney* that "once it is ascertained that there is a named plaintiff with the requisite standing, there is no requirement that the members of the class also proffer such evidence." *Id.* at 118 n.1 (quoting *Denney*, 443 F.3d at 263-64);

---

[11] In his *LabCorp* dissent, Justice Kavanaugh took issue with the Ninth Circuit's rule that permits certification of a class even when the proposed class "potentially includes more than a de minimis number of uninjured class members." 605 U.S. at 330 (Kavanaugh, J., dissenting) (citing *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F. 4th 651, 669 (9th Cir. 2022) (en banc)). In support of a stricter standard, Justice Kavanaugh noted that the Ninth Circuit's rule would result in "overbroad" classes that "threaten massive liability," leading to "coerced settlements [that] substantially raise the costs of doing business." *Id.* at 333. Justice Kavanaugh also noted that Rule 23(f)'s provision providing for interlocutory review of district courts' class certification orders was created in 1998 specifically to alleviate the pressure to settle. *Id.*; *see Speerly v. Gen. Motors*, 143 F.4th 306, 345 (6th Cir. 2025) (Thapar, J., concurring) ("Rule 23's framers recognized the potential for abuse and provided a protective mechanism: A district court's decision certifying a class is immediately appealable."). However, Justice Kavanaugh did address the question of whether a de minimis exception might exist "when there is a *de minimis* number of uninjured class members, . . . so long as some identified mechanisms exists to manageably remove those uninjured members from the class." *LabCorp*, 605 U.S. at 332 n.1 (Kavanaugh, J., dissenting).

*see also Amador v. Andrews*, 655 F.3d 89, 99 (2d Cir. 2011) ("In a class action, once standing is established for a named plaintiff, standing is established for the entire class.")

In this Circuit, there is no bright-line rule requiring class-wide standing "purity," and certification is generally permitted where some class members may be uninjured. *See Seijas v. Republic of Arg.*, 606 F.3d 53, 56–58 (2d Cir. 2010) (affirming class certification despite "[c]omplicated questions . . . as to which bondholders were class members and as to how much each class member could recover"); *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 91 (2d Cir. 2015) (affirming class certification despite the possibility that some class members were uninjured because that issue was "a single arguably individual issue among the myriad common issues"); *Brown v. Kelly*, 609 F.3d 467, 484 (2d Cir. 2010) ("Rule 23(b)(3) requires that common questions predominate, not that the action include only common questions."). Lower courts have followed the Circuit's lead. *See, e.g.*, *In re Actos Antitrust Litig.*, No. 13-CV-9244 (RA), 2024 WL 4345568, at *11 (S.D.N.Y. Sept. 30, 2024) (rejecting the idea that "class membership must be fully determined before a liability determination is made"); *In re Namenda Indirect Purchaser Antitrust Litig.*, 338 F.R.D. 527, 563 (S.D.N.Y. 2021) (concluding that "the fact that some putative class members may be uninjured does not automatically defeat predominance"); *In re Restasis Antitrust Litig.*, 335 F.R.D. 1, 17-18 (E.D.N.Y. 2020) (collecting cases and suggesting that the outer limits of the *de minimis* allowance is around five to six percent of the total class).

Won was better off under the MLOA Policy than she would have been under the Jury Leave Policy. *See supra* Section III.A. This creates a conflict between her interests and the interests of those class members who were worse off under the MLOA Policy. *See Amchem Prods.*, 521 U.S. at 625; *Cordes & Co. Fin. Servs.*, 502 F.3d at 99. Accordingly, the court departs from Judge Eshkenazi's

recommendation and finds that Won is an improper representative. (*See* R&R at 16-18). The court declines to certify Caonaissa Won as class representative. In *Shankroff v. Advest, Inc.*, the court conditionally certified a class because the sole named plaintiff was an improper representative due to "potential for a conflict of interest[]" with class members. 112 F.R.D. 190, 194 (S.D.N.Y. 1986) (conditioning certification on plaintiff's counsel proposing "at least one plaintiff to proceed as representative on behalf of the class" within 30 days). This court adopts the *Shrankroff* court's approach and directs Won's counsel to propose at least one plaintiff to serve as class representative within 60 days of this Memorandum & Order.

The court is satisfied that Won's counsel Outten & Golden LLP is qualified to serve as class counsel. Several district courts have appointed the firm as class counsel, and the court is confident that its representation of the class would meet the standards set out in Fed. R. Civ. P. 23(g). (*See* Declaration of Michael J. Scimone (Dkt. 54-4) ¶¶ 5 (collecting USERRA cases where courts appointed the firm as class counsel), 6 (collecting other cases where courts appointed the firm as class counsel).)

### e. *Ascertainability*

In addition to the four prerequisites enumerated under Rule 23(a), the final supplemental prerequisite recognized by the Second Circuit is "an implied requirement of ascertainability," which requires a class to be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Brecher*, 806 F.3d at 24. Judge Eshkenazi reasoned that the proposed class is ascertainable: the class can be determined based on objective criteria such as an employee's Amazon work group, length of military leave, dates of military leave, and whether a class member received differential or other pay. (*See* R&R at 18.) This information should be readily available in Amazon's records. Amazon does not contest Judge

Eshkenazi's recommendation as to ascertainability. (*See generally* Amazon Obj. to R&R.) The court finds that Won's proposed class is ascertainable because class membership can be "defined using objective criteria that establish a membership with definite boundaries." *In re Petrobras Sec.*, 862 F.3d 250, 264 (2d Cir. 2017).

### 2. Rule 23(b)(2)

Plaintiff initially sought two forms of relief under Rule 23(b)(2): (1) "a declaration that Amazon's practice of creating barriers to paid military leave violates USERRA"; and (2) "an injunction requiring Amazon to offer paid military leave on an equivalent basis with other paid leave." (*See* Mot. at 17.) But in her Reply, Won withdrew her request for an injunction. (*Compare id. with* Reply at 9 ("[N]obody disagrees that Won, as a former employee, cannot seek prospective injunctive relief.")

The court previously dismissed Won's injunctive and declaratory relief claims. *See Won*, 2022 WL 3576738, at *4. Because Won was no longer an Amazon employee at the time when she filed her Complaint and had no intention of becoming one again, she lacked standing to pursue forward-looking injunctive relief. *Id.* (citing *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 465-66 (S.D.N.Y. 2013) ("[A] plaintiff generally lacks standing to seek injunctive or declaratory relief against his or her former employer.")). However, while the court granted Won leave to amend her complaint to address this issue, *id.* at 4, she failed to do so. Now, as part of her motion to certify a class, Won attempts to take a second bite at the apple, this time asking the court for "*retrospective declaratory* relief." (Reply at 9 (emphasis in original).)

As Won failed to amend her complaint to address both standing and pleading insufficiencies with respect to her claims for declaratory relief, the court "declines plaintiff's invitation to resurrect [her] previously dismissed" claim. *Haymount Urgent Care PC v.*

24

*GoFund Advance, LLC*, 738 F. Supp. 3d 426, 446 (S.D.N.Y. 2024). For the same reasons the court dismissed her claims for injunctive and declaratory relief, *see Won*, 2022 WL 3576736, at *4, the court declines to certify her Rule 23(b)(2) class.

### 3. Rule 23(b)(3)

#### a. *Predominance*

The first requirement of a Rule 23(b)(3) class is that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The predominance requirement is a corollary to Rule 23(a)(2)'s commonality requirement but involves a "far more demanding" inquiry into the common questions of law and fact and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623-24. To find predominance, the court must assess:

> (1) the elements of the claims and defenses to be litigated, (2) whether generalized evidence could be offered to prove those elements on a class-wide basis or whether individualized proof will be needed to establish each class member's entitlement to relief, and (3) whether the common issues can profitably be tried on a class-wide basis, or whether they will be overwhelmed by individual issues.

*Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 512 (2d Cir. 2020). In addition, damages must be "capable of measurement on a classwide basis." *Comcast*, 569 U.S. at 34. But generally, "courts have found *Comcast* to pose a low bar." *In re Vale S.A. Sec. Litig.*, No. 19-CV-526 (RJD) (SJB), 2022 WL 122593, at *18 (E.D.N.Y. Jan. 11, 2022).

Won argues that the common issues predominate because "all class members are subject to the same leave policies." (Mot. at 19.) Amazon objects, arguing that Won's individual inadequacy

is indicative of the inadequacy of the class, or at least the daunting prospect of "adjudicating the claims of absent class members [that] would require endless minitrials." (Amazon Obj. to R&R at 14.) While the parties agree that damages must be assessed on an individualized basis, they dispute whether that has a bearing on predominance. (*Compare* Mot. at 20 ("The fact that some class members may have suffered no damages does not defeat predominance") *with* Opp. at 7 ("'[F]iguring out which proposed class members were 'in fact' injured 'would require an individualized inquiry, which would predominate' the litigation." (quoting *Namenda*, 338 F.R.D. at 567)).)

The court agrees with Judge Eshkenazi's finding that the two common questions predominate over the individual questions. The first common question, whether paid leave is a right or benefit under USERRA, is a straightforward legal question with a common answer resolved via common evidence. (R&R at 21-22.) *See Huntsman*, 2021 WL 391300, at *10 (noting that "predominance in employment cases is rarely defeated on the grounds of differences among employees so long as liability arises from a common practice or policy of an employer"). The second common question, whether short-term military leave is comparable to jury duty leave, also predominates because it involves "comparison of the leave policies themselves" and will "generate generalized answers for each member of the proposed class." (R&R at 22 (citing *Clarkson*, 2020 WL 4495278, at *6 (reasoning that the question of whether defendants provided other short-term paid leave comparable to short-term military leave was a common question that satisfied Rule 23(b)(3)).) The court also agrees that "the need to plug in the rate of pay in for each class member does not defeat class certification." (*Id.* (citing *Clarkson*, 2020 WL 4495278, at *6 (certifying a Rule 23(b)(3) class alleging USERRA violation); *Huntsman*, 2021 WL 391300, at *14 (same); *Baker*, 2023 WL 4355333, at *5 (same)).)

Further, the court is undaunted by Amazon's assertion that Won's proposed class composition raises the "spectre of class-member-by-class-member adjudication." (Amazon Obj. at 18 (quoting *Van v. LLR, Inc.*, 61 F.4th 1053, 1069 (9th Cir. 2023)).) Won's inadequacy as a class representative is rooted in her lack of standing under Article III, which Amazon argues is indicative of an "attempt to certify an oversized class." (*Id.* at 22.) Certainly, if Amazon were to be found liable, the parties would have to engage in an individualized inquiry to ensure that employees who were better off under the MLOA Policy do not receive damages. *See generally TransUnion*, 594 U.S. 413. But the process by which individual determinations of damages must be made does not dictate whether that class may be certified under Rule 23. *See Sykes*, 780 F.3d at 88 ("Because the evidence necessary to make out such damages claims, while individual, is easily accessible, such individual damage considerations do not threaten to overwhelm the litigation."). Accordingly, the court finds that common questions of law and fact predominate over any questions affecting only individual members, and the proposed class satisfies the predominance requirement under Rule 23(b)(3).

       *b.  Superiority*

The second and final requirement of a Rule 23(b)(3) class is that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Rule 23(b)(3) also lists four factors—individual control of litigation, prior actions involving the parties, the desirability of the forum, and manageability—which courts should consider in making [the determinations of predominance and superiority]." *Sykes*, 780 F.3d at 82. While the text of Rule 23(b)(3) indicates that these considerations should apply to both predominance and superiority, "they more clearly implicate the superiority inquiry." *Id.*

In support of her argument that a class action is a superior vehicle, Won cites the relatively small individual damages compared to the overall cost of litigation, and the lack of pending litigation regarding Amazon's short-term military leave policy. (Mot. at 21-23.) While Amazon's previously stated objections also relate to the superiority analysis, Amazon's objections to the R&R point only to a provision of USERRA that provides for prevailing plaintiff's attorneys' fees as "sufficient incentive to vindicate those [individual] interests," despite the relatively low damages at stake for the individual. (Amazon Obj. to R&R at 18.) The court concurs with Judge Eskehanzi that "a class action is a superior method of resolving these claims on behalf of the proposed class." (R&R at 25.) Accordingly, the court finds that the second prong of Rule 23(b)(3) is satisfied: the class action is superior to other forms of adjudication.

## IV. CONCLUSION

For the foregoing reasons, the court OVERRULES in part and SUSTAINS in part the parties' objections, and ADOPTS in part and REJECTS in part the R&R. Plaintiff's motion to certify a class, to be appointed Class Representative, and to have her counsel appointed Class Counsel is GRANTED in part and DENIED in part. Plaintiff's motion to be appointed Class Representative is DENIED. Plaintiff's motion to have her counsel appointed Class Counsel is GRANTED. Plaintiff's motion to certify a class under Rule 23(b)(2) is DENIED. Plaintiff's motion to certify a class under Rule 23(b)(3) is GRANTED, subject to an order due 60 days from the date of this Memorandum & Order which shall propose at least one plaintiff to proceed as representative on behalf of the class. The plaintiff(s) to be proposed to the court shall be nominated by Plaintiff's counsel from those plaintiffs most willing and able to serve. The order shall also contain a form of proposed notice and plan for service of this class pursuant to Fed. R. Civ. P. 23(d)(1).

SO ORDERED.

Dated:    Brooklyn, New York
          August 28, 2025                    Λ

                                  s/NGG

                                  NICHOLAS G. GARAUFIS
                                  United States District Judge